VICKSBURG & MERIDIAN R. R. Co. *v.* TOM BARRETT ET AL.

RAILROADS.  *Right of way.  Location of same.  Acquiescence.*

A deed from the owner of a large tract of land to a railroad company of a right of way across the tract, " not exceeding one hundred feet in width," with the right to use " so much land as the officers may deem necessary," is not an absolute conveyance of a right of way one hundred feet wide, but only a right to locate the way not exceeding the width stated ; and the company, having located its road occupying a narrower strip, and having acquiesced thirty years in the occupation of land adjoining this strip by another grantee of the original owner under a subsequent deed, which describes his land as being bounded on one side by the line of the right of way twelve feet six inches from the track, cannot eject such grantee in order to make its right of way one hundred feet wide.

FROM the circuit court of Hinds county, first district.

HON. J. B. CHRISMAN, Judge.

On the 7th day of October, 1887, the Vicksburg & Meridian Railroad Company instituted this action of ejectment against the appellees, Tom Barrett *et al.*, for the possession of a strip of land in the city of Jackson, adjoining the railroad, and claimed by the company as a part of its right of way, under a conveyance from Perry Cohea, made in March, 1837. Defendants also claim under Cohea, by virtue of a deed made by him to one Morris in 1842. They hold through conveyances from Morris.

At the point in controversy the railroad runs from southeast to northwest, and the land in suit is situated on the southwest side of the road. On the trial the evidence showed that the railroad right of way, as at present opened and used, was located several years after the deed from Cohea to the company, and prior to his conveyance to Morris. The railroad company has never been in possession of the land in controversy, but defendants, and those under and through whom they claim, have been in continuous possession since about thirty-six years before this suit was brought. About the year 1885 the company notified the defendants that it required, for the purposes of the road, all the land within fifty feet of the centre of the track, and demanded the removal of their houses and fences from the strip in controversy. The testimony shows that the ground is necessary for the purposes of the railroad. The other facts necessary to an understanding of the case are stated in the opinion.

The court instructed the jury to find for the defendants, and plaintiff appealed.

*Nugent & McWillie,* for appellant.

Long after the conveyance of the right of way to the railroad company, Cohea, without consulting the company, laid off and sold lots impinging upon the right of way, and the strip of land in controversy constitutes part of one of them.

The question in this case is as to the time the statute of limitations began to run. Looking to our deed, we find a positive grant of the right of way, not to exceed 100 feet wide, with the right to

enter upon adjacent lands and take earth, stone and gravel. This deed was for a valuable consideration and conveyed a dominant easement. When the railroad was first laid out, a few feet in width only would be required, but the growth of the city and increased business rendered a broader way indispensable. This was contemplated by Cohea in the grant, and the deed was notice to persons that the company could widen its right of way to the limit of 100 feet when the demands of business required it. All subsequent grantees of Cohea were effected with notice of this right by the registration of our deed. If Cohea himself were defendant, it would not be pretended that he could question our right, and appellees merely stand in his place. Their occupation could not set the statute of limitations in motion, nor would our mere *nonuser* of additional land deprive us of any right.

The erection of improvements by defendants did not give us notice that there was any adverse holding. The presumption is that the parties entered in full recognition of the right of the railroad company, and, up to the time of the demand for possession, their holding could not be considered as adverse in any legal sense.

The easement created by the deed cannot be lost by mere nonuser. *Smyles* v. *Hastings*, 22 N. Y. 217; *White* v. *Crawford*, 10 Mass. 183; *Arnold* v. *Stevens*, 24 Pick. 106; *Owen* v. *Field*, 102 Mass. 90; *Day* v. *Walden*, 46 Mich. 575; *Polson* v. *Ingram*, 22 S. C. 541.

The right of the railroad was fixed in a defined course. The centre line was established, with the right, given by the deed, to establish at any time a way not exceeding 100 feet wide. The case does not come within the rule announced in *Jennison* v. *Walker*, 11 Gray, 426.

There is absolutely nothing to show that the company ever intended to restrict its right to the land actually occupied by the road-bed.

For the existence of an easement there must be two tenements, the dominant and the servient, and these must be held by different persons. The grantor's heirs own the fee in the servient so far as the road-bed is concerned, and the appellees that to the land outside

the road-bed and lying within the limits of our right of way.   Adverse user of the servient estate with *absolute non-user* of the dominant, when continued  for the term  of the statute of limitations, will give rise to the presumption of a release.   *Hoffman* v. *Savage,* 15 Mass. 130 ; *Smyles* v. *Hastings, supra.*   Even then, the possession  must be strictly adverse to the easement.   In all cases  it is a question of fact for the jury to say whether the particular possession has been hostile to the existence of the easement, *under a claim of right inconsistent therewith,* and under such circumstances of notoriety as to be adverse.   *Horner* v. *Stillwell,* 35 N. J. L. 307.

The grant of appellant's right of way is perpetual.   It can only be lost by a release or an actual abandonment.   *R. R. Co.* v. *Ruggles,* 7 Ohio St. 1.

In equity, possibly, the expense of removing the improvements might be cast upon the company, but this does· not contravene our legal rights.   We have not released or abandoned anything.   The law of estoppel cannot apply here for manifest reasons.   Defendants and those from whom they claim took the land in controversy in its existing condition, *subject to the burdens imposed upon it.*   *Pomeroy* v. *R. R. Co.,* 25 Wis. 644 ; *Chance* v. *R. R. Co.,* 22 Am. & Eng. R. R. Cases, 170.

Where the owner of land conveys it to a railroad company, which uses only a portion, and the owner remains in possession of the other, such possession will be deemed to be permissive and not adverse to the company, and the statute of limitations will not . apply.   *R. R. Co.* v. *Oyler,* 5 Am. & Eng. R. R. Cases, 401 ; *Jackson* v. *Burton,* 1 Wend. 341; *Higginson* v. *Mein,* 4 Cranch, 419. To make the statute of limitations available, there must be hostile and adverse possession for the period prescribed.   *Snell* v. *Levitt,* 39 How. (N. Y.) 327 ; 54 Cal. 547 ; *Hicks* v. *Steigleman,* 49 Miss. 377 ; *Rothschild* v. *Hatch,* 54 Ib. 554.

A permissive use of part of the easement by appellees when no inconvenience results to the company is not a surrender of its rights.   This may suspend, but does not abridge the right of appellant to demand a restoration when the interest of the railroad demands its use.   *R. R. Co.* v. *M'Caskill,* 25 Am. & E. R. R. Cases, 90.

Cohea had the right to use so much of his land as was not for the present necessary for railroad purposes, and this use must be construed as permissive until the contrary is shown. This, we think, has not been done.

This case is distinguishable from *R. R. Co.* v. *Houghton*, 18 N. E. R. 301. In that case the court did not seem to think that the railroad's right of way was an easement, but here the conveyance imparts that exclusive character to the grant. *Proprietors* v. *R. R. Co.*, 6 Am. R. 181 ; *Gibbs* v. *Drew*, 26 Ib. 700 ; *R. R. Co.* v. *Doe*, 114 U. S. 350; *R. R. Co.* v. *Allen*, 22 Kans. 285, s. c. 31 Am. Dec. 192 ; Washburn on Easements, 159, 214 ; 1 Redf. on Railways, 247 ; 34 N. H. 282 ; 55 Pa. St. 16 ; 29 Mo. 141 ; 42 Ala. 83 ; 46 N. Y. 556 ; 68 Ib. 591 ; 104 Mass. 1.

The case of *Slocumb* v. *Railroad Co.*, 57 Iowa, 675, is an authority precisely in our favor. See, also, *Barlow* v. *R. R. Co.*, 29 Ib. 276 ; *Yackle* v. *Nace*, 2 Wheat. 123 ; 27 N. Y. 217 ; *Fox* v. *Hart*, 11 Ohio, 414 ; *Noll* v. *R. R. Co.*, 32 Iowa, 66, s. c. 10 Am. R'y Rep. 18 ; 21 Conn. 294; 14 Ohio, 147 ; 30 Const. 511 ; 30 Iowa, 9.

The easement in this case was not acquired by prescription, but by express grant, and a non-user does not extinguish it if the owner of the servient estate does no act which prevents the use. 2 Wash. Real Prop., 370 ; *Arnold* v. *Stevens*, 24 Pick. 106 ; *Ricard* v. *Williams*, 7 Wheat. 109.

It was inoperative and left the owner of the soil free to make such use of it as his interest might require. *Thompson* v. *Gregory*, 4 Johns. 81. Cohea's deed gave him the right to use the land in any way compatible until the full enjoyment of the easement became necessary. 20 Fed. R. 590 ; *Martin* v. *Canal Co.*, 59 N. H. 154; 4 Lead. Ca. Real Prop., 127 ; 6 Am. & E. Cyclopedia of Law, 149.

When it is said that an easement may be lost by abandonment, it is meant that it is extinguished. 123 Mass. 567. We have all along been and still are in the enjoyment of this easement. 41 Me. 34. The only question is, can we demand the extension of our way and the limits of our deed, and there can be no negative answer.

The land is now needed for tracks, and in order to protect the

public and the railroad from accidents likely to occur on account of the proximity and position of appellee's buildings thereon.

*D. Shelton*, for appellees.

Proof that the defendants' buildings are too near the track, has nothing to do with the plaintiff's right to recover. If the plaintiff has shown that the buildings are too near, the only thing to do is to move the railroad further from the houses.

It will be noticed that plaintiff's deed does not convey absolutely a right of way 100 feet wide, but only gives the right to locate a way not to exceed that width. No definite right was granted. The deed is indefinite as to direction, location and width, and it only became definite by the actual location and construction, which could be exercised but once. After it was so exercised, the road was located. Cohea sold the land in controversy, and fixed the boundaries by the line of the railroad as thus *located*. That was nearly fifty years before this suit was brought. The railroad company has never been in possession of the land in question, and never asserted any right to it until 1885. Defendants, and those through whom they claim under the conveyance from Cohea, have been in actual continuous possession of the land for thirty-six years. They built houses and fences upon it, and used the same as their own, the land being distinctly separated from the railroad right of way. Neither the defendants nor their grantors ever in any way recognized any right of the railroad company to this land, and I deny that any ever existed after the original location of the railroad. It is an assumption of counsel to claim that the railroad track is in the centre of the right of way; it does not appear but that the railroad has sufficient land north of the track to make up the 100 feet in width.

On these facts I submit that the plaintiff cannot recover, for two reasons :—

1. Because the grant to the railroad company became specified and defined as to the boundary line of the right of way when it was once located.

2. If mistaken in this, that the defendants are protected by the statute of limitations of ten years.

On the proposition that the railroad company never had a right of way over the land in question, I submit the following principles of law :—

1. Where the express grant is a way over the grantor's land, it is limited to one time which though at first indefinite, when it has been once designated by location or use, cannot be changed at the election of the grantee.   Washb. on Easements, 281, 282, 297 ; 5 Pick. 485 ; 7 Barb. 309.

2. A way over lands granted for a particular purpose carries nothing but what is requisite to the use and reasonable enjoyment of that purpose, and the land-owner may deal with his lands as he pleases consistent with the right so granted.   Washb. on Easements, 286 ; 132 Mass. 238 ; 31 N. Y. 371.

3. A reduction of the way below the width specified is no breach of the stipulation, so long as there remains sufficient width for the purposes of the way.   Washb. on Easments, 286, 287 ; 6 Gray, 548 ; 2 Cush. 133.

4. The fee in a railroad right of way is owned by the original grantor, and the proprietor has all rights in regard to it so long as he does not interfere with the use of the located way. Washb. on Easements, 253 ; 2 Met. 466, 468 ; 132 Mass. 238 ; 31 N. Y. 371.

Argued orally, by *W. L. Nugent*, for appellant, and *D. Shelton*, for appellees.

Cooper, J., delivered the opinion of the court.

In March, 1837, Perry Cohea, then the owner of the land in controversy, and of several hundred acres of which it was a part, by deed granted to the Commercial and Railroad Bank of Vicksburg, a right of way over said lands. The conveyance is of " a right of way and free passage over a certain tract of land . . . . containing about four hundred acres" (describing the land), " not exceeding one hundred feet in width, across said land, or over any part thereof for the location and construction of a railroad from Vicksburg to Jackson ; and full power and authority is given and granted to said company, their officers, servants and agents, to

construct said road over said land, using so much land as the officers may deem necessary ; and to use said road for passage and transportation or for any other purpose so long as the charter of said company continues. And the said president, directors and company, or their officers, agents and servants, may enter on the land over which the route of said railroad may pass and lie adjacent, and cut, quarry, dig and take away any wood, stone, gravel or earth necessary for the construction and repair of said road."

The company entered upon the land under this grant, located its road, and completed its construction, probably in the year 1840.

On the 11th day of April, 1837, Cohea conveyed to one Nichols a lot of land by metes and bounds, one of the calls being a stake on the line of the railroad. In the year 1841 he conveyed another lot of land adjoining and south of said road, and in the year 1842 he conveyed yet another lot so located, of which the land demanded in this suit is a part. In each of these deeds the metes and bounds are by direction and distance, and the northeastern boundary of each lot is the line of the railroad at a distance of 12 feet 6 inches from the southwestern iron of its track.

The contention of the railroad company is that it was granted a right of way one hundred feet wide by Cohea, that its road is located along the centre line of this way, and that it is entitled to recover from the grantees of Cohea an easement over so much of the land as lies within this limit. The contention of defendants is that the southwestern line of the right of way was fixed by the location of the road along the line 12 feet 6 inches from its iron, as above noted. The evidence shows that the earth from the drainage ditch of the company was thrown along the line claimed to be the true one by the defendants, creating a bank along which a fence was erected by the grantee of Cohea, certainly more than thirty years ago, and probably from near the time of his entry. On the demanded strip of land the residence and store of the defendants are built, and, though there have been some changes in their structure, it is clearly shown that for more than thirty years the land has been occupied by houses of a permanent character. The company has never, until within a short time before the institution of

this action, informed the occupants of any claim by it of a right to go upon the premises.

The defendants contend that the company has no right of recovery, *first*, because the line of its right of way was fixed at the time of the location of the road along the line to which their occupancy extends; and, *second*, if this be not true, then that they have acquired title by adverse possession. We are satisfied of the sufficiency of the defense on the first ground. It is, therefore, unnecessary to consider the second.

The conveyance from Cohea did not grant a right of way to the company one hundred feet wide. The right granted was of a way "*not to exceed in width one hundred feet,*" within which limit the officers of the company were to "*use so much land as they may deem necessary.*" The way granted was not fixed by the deed as to place, quantity or direction. It was, until located, a floating right, exercisable over any portion of the land within the limit of width specified. Action was required by the company to indicate and fix the way granted, and though it may be true, as contended by counsel for the company, that ordinarily or universally the road-bed of railroads is laid along the centre of the right of way, such custom cannot control where the conduct of the parties touching the particular right claimed is shown to have been otherwise.

None of the conveyances from Cohea (one of them having been made in less than a month from the grant to the company) contain any reservation or exception of a right of way over the land granted in favor of the company. The conveyances are absolute and unqualified of the whole land described, bounded by a fixed line as the limit of the right of way. Under these conveyances the grantees entered and acted with reference to the whole premises as owners thereof. They built fences and houses, and in this most public and unmistakable manner demonstrated their purpose to hold exclusive possession of the whole of the lot. We must assume that the company would then have made the issue and asserted its right, if it believed it to exist as now claimed. That it failed to do so is sufficient evidence of acquiescence by it in the line treated by its grantor as the boundary of the way granted.

Washb. on Easements, 281; *Wynkoop* v. *Burger*, 12 John. 222; *I. C. R. R. Co.* v. *Houghton,* 126 Ill. 233.

The decisions cited by counsel for appellant, in which the user by the land-owner of a part of the right of way has been held not to be exclusive of the right of the railroad to extend its actual use and occupation, will be found to be cases in which the grant covered the land claimed by fixed lines, up to which a right was given, and not as here grants *of so much land as the company may deem necessary, not to exceed one hundred feet.* In those cases the right claimed was to take as occasion might require possession of the land granted. The claim here is to extend a grant, the limits of which have been fixed by the parties, so as to include lands which might have been, but were not deemed "necessary" by the officers of the company when it located its way under the grant. We find nothing in the conveyance by which authority to locate the way might be exercised more than once, and by the location then fixed the company must be concluded.

*The judgment is affirmed.*