68   55í
73   368

JAMES EWING ET AL. *v.* ALABAMA & VICKSBURG RY. CO.

1. EMINENT DOMAIN.  *Alabama & Vicksburg Ry. Co.  Act of Dec.* 16, 1836.
    Under the power of eminent domain conferred by the act of Dec. 16, 1836, on the Commercial and Railroad Bank of Vicksburg, of which the Alabama & Vicksburg Ry. Co. is a successor, the right to condemn land for its railroad was not limited to the taking of enough for a road-bed, but extended to the condemnation of land needed for station-houses, side-tracks, coal-chutes and other facilities.

2. SAME.  *Railroad.  Second exercise of power.*
    Unless the legislative grant to a railroad company expressly so provides, the right of eminent domain is not exhausted by one exercise of the power in constructing the road, but may be again used if the necessity arises.

FROM the chancery court of the first district of Hinds county.
HON. H. C. CONN, Chancellor.
The facts are stated in the opinion.

*D. Shelton,* for appellants.

1. Statutes conferring the power of eminent domain must be strictly construed. Cooley on Con. Lim. 648 ; 10 Ohio, 288.

Such grants can be founded only on public good as distinguished from private advantage to the grantee. True, private advantage may be associated with public good, but the latter must sustain the right. Therefore, it is no argument that the grant in this case will advantage the railway company, and be convenient to it, and increase its business or profits as a trading company. The purposes set out in the bill are not such as pertain to the public good.

2. The act of 1836, under which appellee derives its power, had one purpose in view in conferring upon the railroad company the right to condemn land, namely, to grant the state's right of eminent domain for obtaining a through right of way from Vicksburg to Jackson. That right of way, when acquired through the land in controversy by contract, consummated the one purpose of the act. When the act was passed, fifty years ago, the purpose of the grant was great public good to the state and its citizens, but this good has long since been realized. The effort now to take from appellee's homestead for a switch and coal-yard, is merely for private advantage to the appellee as a trading corporation. A trivial advantage which it can acquire by purchase, but not by eminent domain. I deny that the right of expropriation of private property for one purpose as a public good confers the right to use it for such other purposes as the officers of a corporation may suppose or pretend to be for the public good.

There is no other statute under which the right sought to be exercised can be derived ; nor does the bill show any other act of the legislature under which such right is claimed.

*Nugent & McWillie,* for appellee.

There has never been any exercise of the power of eminent domain, granted in the charter of the company, which is commensurate with the particular power granted, or the franchises conferred upon the company. The right as to this land has only been exercised as to the road-bed, but the limitation, thus fixed by the

act of the parties when the road-bed was acquired by contract, does not diminish the power conferred by the charter when the public convenience and the interests of the railroad require more. The exercise of the power at that time did not exhaust the right of expropriation. 6 Am. & Eng. Enc. of Law, 523, and cases cited; *Miss. & Tenn. Ry. Co.* v. *Devaney,* 42 Miss. 555 ; 1 Rorer on Railroads, 276, 372, 389.

The bill alleges that the side-track and coal-chute are absolutely indispensable in the conduct of appellee's business. They were located on the land in good faith, and no opposition was made on the part of appellants or their ancestor, until after much expense had been incurred in the construction and maintenance of the side-track and coal-chute. See *Ry. Co.* v. *Stanley's Heirs,* 10 Am. & Eng. Ry. Cas. 345.

WOODS, C. J., delivered the opinion of the court.

The appellee exhibited its original bill in the chancery court of Hinds county, first district, praying that appellants be enjoined from further prosecution of their action of ejectment for the strip of land embraced in this suit, and for condemnation of the land to the use of the railway, and showed that, in the year 1837 one Perry Cohea, by his deed of that date, conveyed to the Commercial and Railroad Bank of Vicksburg, and its successors, in consideration of six hundred dollars, a right of way and free passage over certain lands therein described [and in which the strip of land embraced in the present litigation was included], not exceeding one hundred feet in width, for the location and construction of a railroad from Vicksburg to Jackson ; that said railroad company immediately entered upon said lands and laid off and marked the limits of its road-bed, and constructed its railway thereon, and that said Cohea thereafter sold and conveyed certain lots, in the tract of land through which the railroad's right of way had been secured, and that these lots embraced, on its southern side, part of the right of way of one hundred feet in width, which the railroad supposed had been conveyed to it by Cohea, and extended up to the southern line of the road-bed of the railway ; that the appellants are the

owners now of some of the lots thus sold and conveyed by said
Cohea to individual purchasers; that, a few years ago, the appellee
laid down certain switch-tracks, or side-tracks, and constructed a
coal-chute on the right of way of one hundred feet through the
Cohea lands, but outside of the boundaries of the road-bed as laid
out and marked and occupied, and that this was done, under the ad-
vice of counsel, under the belief that appellee had an easement in the
entire strip of one hundred feet in width, but that, by the decision of
this court in the case of *Barrett* v. *V. & M. R. R. Co.*, 67 Miss. 579,
it has now been determined that the boundaries of the road-bed, as
originally marked out and occupied by appellee, define the limit of
appellee's easement in these lands, and that, therefore, the said coal-
chute and side-tracks are found to be on the lots in the Cohea tract
now owned by appellants, although within the right of way of one
hundred feet; that the strip of land in litigation is necessary for the
use of the appellee in maintaining said coal-chute and side-tracks,
and that they are indispensable.

To this bill, appellants interposed their demurrer by which this
question is raised, viz: has the power and authority of the railway
company to acquire this strip of land in litigation, by purchase or
condemnation proceedings, been swallowed up and lost by reason
of the original exercise of the power in the purchase of the right of
way from Cohea? To state the proposition more generally, does
one exercise of the right of eminent domain exhaust the power?

By the fourth section of an act amendatory of the act incorporating
the Commercial and Railroad Bank of Vicksburg [of which cor-
poration the appellee is the successor], approved December 16,
1836, said company was granted "full power and authority to
enter upon all lands and tenements through which they shall deem
it necessary to make the railroad, and roads provided for in their
charter, and to lay out the same, according to their pleasure; and
to agree and compound with the owner of the lands and tenements
through which they desire said road to pass," etc.

By the fifth section of the same act it is declared: "If the com-
pany cannot agree with the owner of the land through which they
desire said road to pass," a writ *ad quod damnum* shall issue from

the office of the clerk of the circuit court of the county in which the lands lie, commanding the sheriff to summon a jury to assess the " damage suffered by such owner by reason of the making of said road through the land, . . and the said inquest shall vest in said company the right to occupy and use such land for the purposes of said railroad," etc.

The fourth section authorized the purchase of land through which the road was to pass where that was practicable, and section fifth authorized condemnation proceedings against lands where purchase was impracticable.   Under the fifth section, the power to exercise the right of eminent domain by the appellee is alone conferred in express terms.   The act of 1836 only provides an additional mode and manner of exercising the right of eminent domain.

The learned counsel for the appellants makes a strong and most interesting argument in an effort to narrow the question involved, as we have already stated it, by advancing and supporting two propositions, viz : 1. The right of eminent domain can only be exercised for the public good, and never for private convenience or corporate advantage : in this case the use of the lands involved will be of trivial advantage to the corporation, and promotive of private convenience only ; and, therefore, the exercise of the power, even if lodged in the appellee by legislative grant, must be refused and denied.   The syllogistic statement is irrefragable, and the conclusion to which we are conducted final, if the premises on which it rests are sound.   But the record in the cause demolishes the minor premise of the argument.   The bill of appellee avers that the land is necessary and the coal-chute and switch-tracks indispensable, and the demurrer confesses the truth of these averments. And so, we see, the effort to narrow the question at this point, fails.

2. The further effort to narrow the question rests upon the proposition, that condemnation proceedings, under the act of 1836, which we have briefly quoted hereinbefore, can only be had to the extent of forcing a way through the lands of disagreeing owners, and that a right of way [held by us, in *Barrett* v. *V. & M. R. R. Co.*, 67 Miss. 579, to be only about thirty feet in width on the Cohea lands, at the point where condemnation is now sought to be

had] having once been obtained by purchase, without resort to the exercise of the right of eminent domain, the power originally conferred has been exhausted, and no expropriation is now possible.

The answer to this proposition will be found by reference to the language of the charter contained in the act of 1836. The fourth section confers power and authority on the railroad company to enter upon lands through which they shall deem it necessary to make the railroad [not a mere road-bed, or even a mere right of way], and to lay out the same according to their pleasure, etc. The fifth section, in cases where agreement could not be had with the land-owners, provides for assessing compensation to the unwilling owner for " damage suffered by such owner by reason of the making of said road through the land." And, further, by this fifth section it is declared that " the inquest shall vest in said company the right to occupy and use such lands for the purposes of said railroad," etc. These several quotations show quite clearly that the power conferred was not that of forcing a mere road-bed or mere right of way from Vicksburg to Jackson, but to enable the company to acquire the right to use and occupy lands to build and maintain a railroad between the two named points. To do this, grounds for intermediate stations, grounds for terminal facilities, grounds for side-tracks, grounds for water supply, and grounds for deposit of fuel were equally necessary and equally in legislative contemplation as grounds for a road-bed itself.

Finding, thus, the effort to narrow the inquiry involved unavailing, the real question remains, viz : Does the original and single exercise of the right of eminent domain, conferred by legislative power, exhaust the grant? Can there be no. second exercise of the right when necessity arises ?

It is hardly necessary to say, that the right of eminent domain, an attribute of sovereignty, can neither be conferred nor exercised for private convenience or corporate advantage. Only the public good will uphold the grant or the exercise of the right. Neither in a first expropriation, nor any subsequent one, can the power to take private property against the consent of the owner be upheld except in cases where the public good requires it.

Where, however, the exercise of this right of eminent domain has been conferred for the public good, for the promotion of the interests of the community at large, and the subsequently arising necessities of the people demand enlarged means and ampler facilities to meet the ends contemplated in the original grant of the power, what solid reason can be assigned for limiting the exercise to a solitary act?

The grant to railways of the right of condemnation is founded upon the public use. The main lines, at least, are in the nature of great public highways constructed to meet the convenience and interests of travel and traffic. And in their construction they are, if the ends of their creation are to be met, to grow with the growth of the country, and keep step with the requirements of the public needs. The meagre equipment and small facilities necessary to meet the public convenience and good fifty years ago, when the original corporation, of which appellee is the successor, projected and laid out and built a small railway to connect two towns, small in population, and insignificant in commercial aspects, required but little land for road-bed, and side-tracks and station-houses and turn-tables and repair shops and terminal and other facilities, and no condemnation could have been reasonably contemplated beyond the then necessities. But now, when the small line between Vicksburg and Jackson has stretched across the entire state and has become an integral part of a great system of railway communication reaching through many states, and when the mighty increase in population and the vast multiplication of commercial interests and enterprises demand then unthought-of facilities to fulfil the ends of the railway's creation, shall the company be confined to the miserable and wholly inadequate facilities and means, which at the beginning met the object for which the legislature gave it life?

We do not forget that grants of power, of the character under consideration, are to be strictly construed. But that is not a strict construction which denies to the agency created the very means which are indispensable to the accomplishment of the ends of its creation. That is the destruction of the agency, and not a construction of the grant of the powers conferred. Whatever is clearly

necessary to the execution of the public good contemplated in the creation of the agency is as clearly within the grant as the expressly delegated power. The rigid adherence to the letter of the grant will deny to the railway everything except a mere road-bed. Grounds for side-tracks, for station-houses, for turn-tables, for fuel-storage, for water-tanks, for repair shops will be admitted to be absolutely indispensable to the operation of the great public purpose for which the corporation was created, and no syllable touching these necessary adjuncts can be found in the letter of the charter. True, the public uses only the main line of the railway, and all the adjuncts' just named are used solely by the railway company, and yet these are as necessary to the attainment of the public good as the main line itself.

Fifty years ago there was no necessity for more land than the railway company took. Was it in the legislative purpose to require of its creature that prevision which would enable it to look through a half century, and, at the outset, make ample, though then useless, provision for all future public necessities? Rather, shall we not be warranted in holding that when the state, for the public good, authorized this corporation to expropriate lands, it was in contemplation that the power should only be used as necessity arose, and that private property would not thus be taken until the general convenience and public welfare required it? This course commends itself as the one imposing fewer burdens on the corporation and smaller hardships upon the private citizen whose lands might be needed. "Sufficient unto the day is the evil thereof," would seem to be of force in the domain of expropriation, as well as elsewhere in human affairs.

Without citing authorities in detail, we think the proposition, that a single exercise of the right of eminent domain by a railway company does not exhaust the grant, is supported by the weight of judicial opinion, as well as by sound reason.

*The decree overruling the demurrer is affirmed, and the cause remanded for further proceedings.*