St. Louis, Iron Mountain & Southern Railway Co. *v.* Stevenson.

Opinion delivered October 9, 1916.

Railroads—Grant of right-of-way—Land occupied by the railroad company.—One B. granted the appellant railroad company a right-of-way over certain lands owned by him, without specifying the width of the right-of-way granted. The railroad company occupied a right-of-way about thirty feet in width, and some time thereafter sought to extend its right-of-way to the statutory limit. (Kirby's Digest, § § 2939–2940.) *Held*, the railroad company could not extend the limits of its right-of-way beyond the territory already occupied by it without a new grant from the owner of the land.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Troy Pace* and *W. R. Satterfield,* for appellant.

1.   Brandon and his successors are charged with full knowledge of all the rights the grantee in the deed and his successors had thereunder.   Actual possession is notice.   76 Ark. 25-27; 107 Ark. 319.   The deed vested the right of way, fixed by statute at six rods.   99 Ark. 61; Kirby's Digest, § 2903.   A right of way is fixed by statute at six rods wide.   *Id.* § 2940, 65-72; 69 Ark. 104; 99 *Id.* 61.   Hence the company had a right of way 99 feet wide and had the right to take and use a strip that wide at any time.   69 Ark. 104; 80 *Id.* 503; 84 *Id.* 366; 87 *Id.* 121. The conclusion follows that Brandon could not have maintained, and plaintiff cannot now maintain, ejectment for any of the lands except *in excess* of six rods in width. The defendant succeeded to all of Brandon's rights. Words & Phrases, Vol. 4, p. 593; 81 C. C. A., 643; 138 U. S. 1; 172 *Id.* 171; 98 Ill. 350.

2.   Possession of Premises.   Neither the plaintiff nor his predecessors have ever had the actual or manual possession of the right of way in controversy—it has never *been fenced nor enclosed.*   69 Ark. 562-5-6; 108 *Id.* 569; 102 *Id.* 442; 2 L. R. A. (N. S.) 272.

3.   The action is barred by limitation.   51 Ark. 233; 67 *Id.* 84.

4.   Defendant and its predecessor in title have been in possession since 1881 and plaintiff is estopped.   51 Ark. 491; 80 *Id.* 503; 102 *Id.* 451.

*D. S. Plummer, Daggett & Daggett* and *Mann, Bussey & Mann,* for appellee.

1.   The deed not having been acknowledged or recorded it was not notice to subsequent purchasers. The cases cited for appellant were those where the conveyances gave definite boundaries.   Here the case is different.   The only description is the phrase "Right of way."   Appellant had the right under the statute to condemn a strip 6 rods wide, but it did not and the statutes are a mere limitation on the right to take more than 99 feet, but imposes no obligation to take that much. 108 Ark. 569.   As to the meaning of right of way see

5 N. W. 482; Words & Phrases, p. 6230 *et seq.;* 34 Cyc. 1767.

2.   Appellant has not had adverse possession, for the full period of time, of the full strip.   69 Ark. 562; 90 *Id.* 182; 84 *Id.* 52; 85 *Id.* 520.   These cases settle the question against the contention of the appellant.

McCULLOCH, C. J.   This is an action instituted by appellee against appellant to recover damages to the extent of the alleged value of land taken by appellant, a railway corporation, as a part of its right-of-way.   The court, sitting as a jury, found in appellee's favor and awarded damages in the sum of $100.00, the amount stipulated by the parties to be the value of the land in controversy.

The facts are undisputed, being set forth in an agreed statement.   It appears that many years ago the railroad was constructed by appellant's predecessor, the Iron Mountain & Helena Railway Company, through lands then owned by J. B. Brandon, who subsequently conveyed to appellee.   Brandon's deed to said railroad company, dated March 22, 1870, recited the consideration that the railroad was to be built through and over the lands of the grantors, and granted a right-of-way "through and over said lands situated as aforesaid," without specifying the width of the right-of-way so granted; nor does the deed describe any particular land, but merely gives the right-of-way over the lands of the several grantors who signed the deed, situated in Phillips and St. Francis counties.   The deed has never been recorded.

Said railway company, in constructing its road over the land in controversy, built an embankment or dump thirty feet in width, and in doing so dug pits in excavating earth four feet in width and situated a distance of ten feet on each side of the dump.   The dump itself and the pits, counting from the outer edges, occupied a strip fifty feet in width.   Said company also constructed and continuously maintained a telegraph line, consisting of poles and wires strung thereon, along the east side of the track forty feet distant from the center of the track.   The

grantor, Brandon, continued to cultivate the lands up to the edge of the borrow pits, and appellee, his grantee, continued so to cultivate the land until the year 1912, when appellant, having succeeded to the rights of the Iron Mountain & Helena Railway Company, undertook to fence its right of way and constructed fences on each side of the track fifty feet from the center of the track. Appellee immediately instituted this action to recover as damages, the value of the land between the edges of the pits on each side of the track and the fences, treating this new occupancy as a fresh taking of the land not embraced in the original occupancy under the grant from Brandon.

The contention of appellant is that the deed of Brandon to appellant's predecessor constituted a grant of the right of way of the full width of six rods authorized by the statute, and that the occupancy of any portion of the strip constituted an occupancy of the whole. The statute in question authorizes a railroad company "to purchase, and by voluntary grants and donations receive and take, and * * * enter upon and take possession of and hold and use, all such lands and real estate and other property as may be necessary for the construction and maintenance of its railroad, etc." And to "lay out its road, not exceeding six rods wide, and to construct the same, and for the purpose of cuttings, embankments and procuring stone and gravel may take as much more land, within the limits of its charter, * * * as may be necessary for the proper construction and security of the road." Kirby's Digest, sections 2939, 2940.

This court has held that the statute in question prescribes the maximum width of the right-of-way for the purpose of laying out a railroad. *McKennon* v. *St. L., I. M. & S. Ry. Co.*, 69 Ark. 104; *St. L., I. M. & S. Ry. Co.* v. *Faisst*, 99 Ark. 61. The right of way deed, even without specification of the width, conferred upon the grantee the right to occupy a strip of the full width specified in the statute, but it did not constitute an absolute conveyance of a strip of land of that width. It gave, in other words, the right to locate the railroad, and in doing so to use a strip as wide as that specified in the statute.

But having once appropriately designated the location, the rights under that deed were exhausted, and any additional lands within the maximum amount prescribed by statute, or the right to occupy the same, must be re-acquired by a new grant or by condemnation.

The case of *Vicksburg & M. R. R. Co.* v. *Barrett,* 67 Miss. 579, is directly in point. The deed under consideration in that case was one conveying to the railroad company a right of way 100 feet in width across certain lands, but the full width of the strip was not actually occupied in locating the road. Many years afterwards, when the original grantor of the right of way had conveyed the lands to others, the railroad company, as in this case, sought to take the remainder of the hundred foot strip described in the deed. The Supreme Court of Mississippi decided against the contention of the railroad company, and in disposing of the case said:

"The conveyance from Cohea did not grant a right of way to the company one hundred feet wide. The right granted was of a way *'not to exceed in width one hundred feet,'* within which limit the officers of the company were to *'use so much land as they may deem necessary.'* The way granted was not fixed by the deed as to place, quantity, or direction. It was, until located, a floating right, exercisable over any portion of the land within the limit of width specified. Action was required by the company to indicate and fix the way granted, and though it may be true, as contended by counsel for the company, that ordinarily or universally the road-bed of railroads is laid along the centre of the right of way, such custom cannot control where the conduct of the parties touching the particular right claimed is shown to have been otherwise. * * * * * The claim here is to extend a grant, the limits of which have been fixed by the parties, so as to include lands which might have been, but were not deemed 'necessary' by the officers of the company when it located its way under the grant. We find nothing in the conveyance by which authority to locate the way might be exercised more than once, and by the location then fixed the company must be concluded."

Another decision to the same effect is *Fort Wayne, C. & L. Ry. Co.* v. *Sherry*, 126 Ind. 334, 10 L. R. A. 48. The statute under consideration in that case, as in the present one, described the maximum of six rods for the width of a railroad location, and there was a conveyance of a right of way without specifying the width of the way granted. The court said: "The contention of the appellant's counsel is in effect that, as the statute provides that a railroad company may acquire land six rods in width, the grantee did, by force of the conveyance, acquire that quantity of land. The appellee's counsel insist that the deed does not necessarily vest in the appellant the quantity of land claimed, but that the quantity actually taken and used by the grantee determines its rights. The law is with the appellee. The deed does not designate, nor profess to designate, the quantity of land conveyed, and the quantity conveyed can only be ascertained by the aid of extrinsic evidence. The fact that the statute provides that a railroad company may acquire a right of way six rods in width does not definitely fix the rights of the parties. A railroad company is not bound to purchase a strip six rods in width, nor can it be implied from such deed as the one before us that it obtains, by gift or by purchase, a right to that quantity of land."

This court decided in the case of *Board of Directors of St. Francis Levee District* v. *Bowen*, 80 Ark. 80, that the grant of a way over which to construct a levee was exhausted by the exercise of the right in the location of the levee, and that an extension of the power must be obtained through a new grant.

The principles thus announced, we think, are conclusive of the present case so far as relate to the point now under discussion, and we are of the opinion that the railroad company, while the authority conferred was to take so much of the land that was necessary within the maximum specified by the statute, by the location of the railroad and the occupancy of a narrower strip exhausted the right, and that neither the grantee nor its successors had the right to subsequently extend the occupancy without obtaining a new grant or condemnation. We

think the occupancy extended to the edge of the borrow pits on one side of the track and to the outer edge of the telegraph line on the other side, it being shown that the poles and wires were placed and have been continuously maintained as a part of the operation of the railroad. It therefore extended the occupancy of the premises to the outer edge of the line of poles, the same as if the company had staked off or otherwise marked the extent of its occupancy. *Hargis* v. *Kansas City, C. & S. Ry. Co.*, 100 Mo. 210.

We do not deem it necessary to determine the question of the statute of limitation raised concerning the continued occupancy by the original owner of the land between the line of telegraph poles and the edge of the borrow pits, which constituted a strip fifteen feet in width. We therefore leave undecided the question whether the continued cultivation of that land, and nothing more, constituted such hostile possession as would give a title to the original owner and his grantees against the railroad company thus occupying by the use of its telegraph lines. If there was no re-acquisition of title to that strip by the original owner or his grantee, then the court was in error in including the strip in his assessment of damages, but the parties selected the point of controversy by stipulating concerning the valuation of the lands in controversy, and did not treat it as important to separate the valuation of the fifteen foot strip between the telegraph poles and the edges of the borrow pits. We therefore decide the controversy here on the grounds selected by the parties themselves, and determine the point at issue, whether the railroad company acquired the right to take and occupy at any time a way of the full width of six rods.

The conclusion we have reached on that point being against the contention of appellant, it follows that the judgment should be affirmed, and it is so ordered.