DRAINAGE DISTRICT No. 16, MISSISSIPPI COUNTY, *v.* HOLLY AND ROACH.

4-8560, 4-8561 (consolidated)          214 S. W. 2d 224

Opinion delivered October 11, 1948.

· Rehearing denied November 15, 1948.

890

*Shane & Fendler,* for appellant.

*C. M. Buck* and *J. G. Sudbury,* for appellee.

Ed. F. McFaddin, Justice. These two cases were separately appealed and briefed; but the evidence is identical and the questions may be settled in one opinion. They are: (1) What are the boundaries of the present right-of-way of the District? and (2) Has the District abandoned its old right-of-way?

Drainage District No. 16 of Mississippi County (here referred to as District) was established by order of the County Court in 1915 under the Alternative Drainage District Law of Arkansas (§ 4455 *et seq.,* Pope's Digest[1]). For the purpose of draining and protecting against overflows approximately 60,000 acres in Mississippi county, the District constructed a levee, twenty miles long, west of Big Lake and Little River, extending from the Missouri State Line to the south boundary of the District. The County Court made an order in 1915 locating the levee; but, as actually constructed on the lands here concerned, the levee was not on the site specified in the County Court order. The right-of-way for the 1915

---

[1] In § 40 of Sloan's two-volume treatise on "Improvement Districts in Arkansas," there may be found, compiled, to the date of the publication of that treatise, the various Acts on the Alternative Drainage System Law.

levee seems to have been acquired by *prescription* rather than by *condemnation* or *grant from the landowners.*

In 1938, the Federal Government agreed to construct a new set-back levee if the District would furnish the right-of-way. Accordingly, the District obtained from J. W. Cowan an instrument entitled "flowage easement" which described the lands affected by said instrument as follows: "A right-of-way 250 feet in width over and across the Frl. S½ of the NE¼, section 21, township 16 north, range 9 east, to be used for the construction and maintenance of said floodway levee and said land side ditch."

The District also obtained from R. E. Santy a similar flowage easement which described the lands affected as follows: "A right-of-way 300 feet in width over and across the north half of the southeast quarter, west of old levee, section 21, township 16 north, range 9 east, to be used for the construction and maintenance of said floodway levee and said land side ditch."

The lands described in the instrument from Cowan to the District are now owned by Holly, who is the appellee in case No. 8560; and the lands described in the instrument from Santy to the District are now owned by Roach, appellee in case No. 8561.

By authority of the foregoing instruments, the District, in 1938-1939, constructed a new levee on and over the lands described in the instruments, and then constructed a ditch on the land side of the levee; that is, the ditch is west of the levee and within the protected lands. The dirt for the new levee was obtained by using all of the old levee, and also by using the dirt from the said land side ditch. In 1939 or 1940, after the completion of the new levee, houses and fishing camps were constructed on appellees' lands outside the new levee—*i. e.,* between it and the lake, and on or near the location of the old levee. These buildings were used as a congregating place for fishermen and others who crossed the new levee to reach them.

Thereupon, in 1946, the District filed these suits against the appellees, Holly and Roach, who respectively

claimed by grant from Cowan and Santy, and who are occupying the land in front of the new levee. The District prayed that its title be quieted to the right-of-way of the new levee and the land side ditch; that the defendants be required to vacate and remove their buildings and camps, as heretofore mentioned; and that all the defendants be permanently restrained from interfering in any way with the District in safeguarding and maintaining the new levee and land side ditch. The defendants, by answer, claimed that their buildings were located on lands entirely east of, and outside of, the right-of-way of the new levee; and that the right-of-way of the old levee had been abandoned by the District and was owned by the defendants.

After an extensive hearing, in which maps and aerial photographs were introduced and many witnesses heard, the Chancery Court entered a decree in favor of the defendants and against the District. In each case the Court found: "And the Court finds that plaintiff District never acquired any rights-of-way across the lands in suit at the location where it constructed its levee in 1915, except by prescription, and that such rights-of-way and easements as were acquired by prescription were abandoned and lost as the result of tearing away and removing, in 1938-1939, the levee so constructed in 1915, and by acquiring new rights-of-way across said lands and constructing a new levee in 1938-1939."

In the Holly case (No. 8560 here) the Chancery Court also found: " . . . that the right-of-way acquired by plaintiff district . . . by deed [2] from J. Wiley Cowan . . . is a single strip of land 250 feet in width over and across the fractional south half and the northeast quarter of said section 21, township 16 north, range nine east, Mississippi county, Arkansas, beginning, for its western boundary, at a point five feet west of the west bank of the land side or seep ditch, constructed by the U. S. Government in 1938 or 1939, and extending east 250 feet."

In the Roach case (No. 8561 here) the Chancery Court also found: " . . . that the right-of-way ac-

quired by plaintiff District . . . by deed [2] from R. E. Santy . . . is a single strip of land 300 feet in width over and across the north half of the southeast quarter of section 21, township 16 north, range 9 east, Mississippi county, Arkansas, beginning, for its western boundary, at a point five feet west of the west bank of the land side or seep ditch, constructed by the U. S. Government in 1938-1939, and extending east 300 feet.''

In each case the District's complaint was dismissed for want of equity; and these appeals challenge the correctness of the Chancery decrees.

I. *The District says: ''The Right-of-way of the New Levee Extends from a Point Five Feet West of the West Toe of the New Levee Eastwardly to the West Line of the Old Levee.''* In this contention, the District asks us to reverse the Chancery Court and hold: (1) that the right-of-way of the new levee was necessarily immediately adjacent to and west of the old levee; and (2) that the land side ditch—constructed 100 feet west of the new levee—is entirely outside of the rights-of-way granted by Cowan and Santy to the District; because, if the land side ditch is a part of the rights-of-way granted by Cowan and Santy, then the grant would not extend from the land side ditch to the rights-of-way of the old levee. The Commissioners of the District and also persons owning land adjacent to the Cowan (now Holly) and Santy (now Roach) lands testified that they ''understood'' that the District had always claimed its right-of-way to be as stated in this topic heading. But we hold that the wording of the instruments and the actual location of the new levee and the land side ditch afford full support to the decree of the Chancery Court.

In neither the Cowan nor the Santy instruments was the right-of-way described by metes and bounds. In the Cowan instrument this was the description: ''right-of-way 250 feet in width . . . to be used for construction and maintenance of said floodway levee and said land side ditch.'' The instrument nowhere states that the right-of-way was to be adjacent to the old levee; and

---

[2] The "deed" is the "flowage easement" previously mentioned.

if we should so hold—which we do not—then we would be (1) reading something into the written instrument which is not there, and (2) doing violence to what the instrument stated to be the intended use for the right-of-way—i. e., a new levee and a land side ditch. Both were located within the 250-foot right-of-way. In the Santy instrument, the description was "a right-of-way 300 feet in width . . . west of the old levee . . . to be used for the construction and maintenance of the said floodway levee and said land side ditch." The District contends that the language "west of the old levee" necessarily means that the right-of-way was to be west of *and immediately adjacent* to the old levee, but the words "west of old levee" cannot be enlarged to mean "and adjacent to." Rather, the fact that the District constructed the land side ditch and the new levee within the 300-foot right-of-way clearly indicates that a description was intended which would include the location of both the land side ditch and the new levee.

In *Fulcher* v. *Dierks Lumber & Coal Company,* 164 Ark. 261, 261 S. W. 645, Mr. Justice Wood, speaking for this Court, said: "As is held by the Court of Appeals of New York, 'when the right-of-way is not bounded in the grant or reservation, the law bounds it by the lines of reasonable enjoyment.' Where such right-of-way is reserved, or expressly granted and not defined, the owner of the servient estate, in the first instance, has the right to delimit it, and, in the event of his failure to do so, it may be selected by the grantee of the easement; but, in either case, the location must be a reasonable one, taking into consideration the interest and convenience of both the dominant and servient estates. 9 R. C. L. 791, § 48, and cases there cited; *Grafton* v. *Mauer,* 103 N. Y. 465, 29 N. E. 974, 27 Am. St. Rep. 533, and cases there cited; see, also, *U. S.* v. *Van Horn,* 197 Fed. 611-616; 14 Cyc. 1161-1203; *Alabama Corn Mills Co.* v. *Mobile Docks Co.,* 200 Ala. 126, 75 So. 574; *McKenney* v. *McKenney,* 216 Mass. 248, 103 N. E. 631."

The District, as the owner of the dominant estate, selected and fixed the right-of-way by locating the levee and the land side ditch. In *St. L., I. M. & S. Ry. Co.* v.

*Stevenson,* 125 Ark. 357, 188 S. W. 832, we held that once the owner of the dominant estate had selected it, then the right-of-way could not thereafter be extended without a new grant from the landowner. To the same general effect, see *Board of Directors of St. Francis Levee District* v. *Bowen,* 80 Ark. 80, 95 S. W. 993. The rationale of the general holdings on this point is stated in 17 American Jurisprudence, p. 998: "The general rule is that the location of an easement once selected cannot be changed by either the landowner or the easement owner without the other's consent. The reason for this rule is that treating the location as variable would incite litigation and depreciate the value and discourage the improvement of the land upon which the easement is charged. Accordingly, a definite location of an easement determines and limits the right of the grantee so that he cannot again exercise a choice." See, also, annotation in 110 A. L. R. 182 and Thompson on Real Property (Per. Ed.) § 565.

Since the flowage instruments of 1938-1939 (as herein involved) provided for both a levee and land side ditch, and since the District located both the levee and the ditch over the lands here involved, we reach the conclusion that the Chancery Court correctly decreed that the District's right-of-way included both the levee and the land side ditch; and we affirm the decree of the Chancery Court fixing such locations.

In the Roach case it was shown that in 1941 Roach leased from the District the levee right-of-way for pasturage purposes, and also that Roach has farmed the strip between the land side ditch and the levee. Based upon this evidence, it is claimed by the District that Roach thereby acquiesced in the District's present contention which is that the land side ditch is no part of the right-of-way. We affirm the action of the Chancery Court in holding against the District on this contention. The District by its easement had a right to use the property for a land side ditch and a levee, and also for any other purposes necessary or incidental thereto. Aside from these express and implied uses, the lands belonged to the landowners. In pasturing the levee with the consent of

the District and in farming the strip between the levee and the ditch, Roach was not claiming any rights in the easement different from those which he had as landowner, nor was he recognizing any rights in the District different from those granted. The strip of land (about 100 feet in width) between the land side ditch and the west toe of the new levee could be cultivated by the landowners with the consent of the District so long as such use did not interfere with the superior rights of the District to its right-of-way. In *Patterson Orchard Co.* v. *Southwest Arkansas Utilities Corp.*, 179 Ark. 1029, 18 S. W. 2d 1028, 65 A. L. R. 1446, (in which the appellant was the landowner, and the appellee had a right-of-way easement) we said: ". . . the appellee has the exclusive possession of the strip of land taken for all purposes necessary to carry into effect and maintain the transmission line, and to no other extent. Therefore the appellant still has and does have the right to enter upon the same at all reasonable times and for all reasonable purposes not inconsistent, or in interference, with the rights of the appellee. Appellant may continue to grow his peach trees, cultivate them, and gather the fruit, so long as it does not interfere with the property of the appellee or its employees in the performance of their legitimate duties."

And in 17 American Jurisprudence, p. 994, the rule is stated: "On the other hand, nothing passes as an incident to the grant of an easement except what is requisite to its fair enjoyment; and notwithstanding such a grant, there remains with the grantor the right of full dominion and use of the land, except in so far as a limitation thereof is essential to the reasonable enjoyment of the easement. It is not necessary that the grantor expressly reserve any right which he may exercise consistent with a fair enjoyment of the grant; such rights remain with him." So the use by Roach of the land between the levee and the land side ditch did not change the right-of-way selected by the District for the levee and the land side ditch.

II. *The District says: "The Right-of-way of the Old Levee Extends from the West Line of the Slope of the*

*Levee 200 Feet Eastward."* Having fixed the location of the right-of-way under the Cowan and Santy grants of 1938, in Topic I, *supra,* there actually exists a strip of land approximately 75 feet wide lying east of the present right-of-way and the location of the old levee. Then there is another strip approximately 50 feet wide between the location of the old levee and the Borrow Ditch in front of the old levee from which ditch the dirt was evidently obtained to construct the old levee. It is on these two strips and the intervening strip (where the old levee was located) that are now situated most of the buildings used by defendants. In other words, these buildings are outside [3] the right-of-way of the present levee, as fixed in Topic I, *supra.* Most of these buildings are on the right-of-way of the old levee; and if the District has not lost this right-of-way by abandonment, then the District is entitled to have the buildings removed if they interfere with its rights.

We come then to the question: Has the District lost its right-of-way to the old levee location by reason of abandonment? The issue here is abandonment, and not that of mere nonuser. It is well recognized that an easement (whether created by grant or prescription) may be lost by abandonment. *Gurdon & Ft. Smith Rd. Co.* v. *Vaught,* 97 Ark. 234, 133 S. W. 1019; *Fulcher* v. *Dierks Lumber & Coal Co.,* 164 Ark. 261, 261 S. W. 645; Thompson on Real Property (Per. Ed.) § 691; 17 American Jurisprudence 1026; 19 C. J. 940; 28 C. J. S. 722. In *Gurdon & Ft. Smith Rd. Co.* v. *Vaught, supra,* Mr. Justice FRAUENTHAL said: "Whether or not an abandonment exists in any given case depends upon the particular circumstances of such case. A right-of-way is but an easement, which will be held to be abandoned when the intention to abandon and the acts by which such intention is carried into effect clearly indicate such abandonment. While nonuser does not alone constitute an abandonment, yet it is some evidence thereof, and when, in addition to such nonuser, facts are proved and circumstances shown

---

[3] That is, between the levee right-of-way and the stream against the waters of which the levee was designed to afford protection.

in testimony evincing that intention, then the abandonment is established.''

The evidence showing abandonment of right-of-way of the old levee embraces, *inter alia,* these facts: (a) The 1915 right-of-way was for a levee only, and in 1938 the District acquired by grant a right-of-way for a new levee, which was erected on the new location. (b) The District entirely destroyed the old levee by removing the earthen embankment to the location of the new levee.[4] (c) The District exercised no control over the right-of-way of the old levee from 1939 until shortly before the filing of this suit. (d) The District suffered the appellees to erect buildings of a permanent nature on the old right-of-way. In 17 American Jurisprudence, p. 1028, in the discussion of abandonment of an easement, this appears: ''Abandonment of an easement will be presumed where the owner of the right does or permits to be done any act inconsistent with its future enjoyment.'' See, also, Thompson on Real Property (Per. Ed.) § 694.

There was other evidence of abandonment, and the Chancery Court found that the District had abandoned its old right-of-way. We cannot say that the decree of the Chancery Court on this issue is against the preponderance of the evidence; so, we affirm the finding as to abandonment.

III. *The District says: ''All the Appellees Have Been Interfering with the District's Commissioners in Many Particulars, and If Left Unrestrained Will Continue to Interfere to a Greater Extent.''* We forego any extended discussion of this topic. If the District desires to proceed by eminent domain to acquire the defendants' holdings, then this present suit is no bar, assuming—but not deciding in this opinion—that the District has such power of eminent domain. Furthermore, if the defendants, by trespass or otherwise, have damaged the levee or should do so in the future, then this case is no bar to a proper proceeding by the District for redress and relief. The present litigation was primarily a proceeding to

---

[4] The aerial photographs in the record show that the location of the old levee is level with the surrounding terrain.

have determined judicially (1) the right-of-way of the District under the Cowan and Santy instruments, and (2) the rights of the District to the right-of-way of the old levee. We have determined only those questions.

The decree of the Chancery Court is affirmed in each case.