FULCHER *v.* DIERKS LUMBER & COAL COMPANY.

Opinion delivered May 12, 1924.

1. LOGS AND LOGGING—CANCELLATION OF TIMBER DEED.—In an action to enjoin interference with the construction of tramways for hauling logs, where the court found that plaintiff's right to remove timber from defendant's land was lost by failure to remove the timber within a reasonable time, it was error not to cancel plaintiff's timber deed as prayed in defendant's·cross-complaint.

2. LOGS AND LOGGING—TIME FOR CUTTING TIMBER.—Timber must be cut and removed within a reasonable time under a deed permitting its removal at the grantee's convenience.

3. LOGS AND LOGGING—REASONABLE TIME.—Twenty years is more than a reasonable time for cutting and removing timber, under a contract permitting its removal at the grantee's convenience.

4. APPEAL AND ERROR—HARMLESS ERROR.—Error in failing to cancel a timber deed was not prejudicial where the decree forever precluded the grantee from asserting a right to cut and remove the timber.

5. EASEMENTS—RIGHT-OF-WAY.—It is not essential to the validity of a grant of a right-of-way that it be described by metes and bounds or by figures giving definite dimensions of the easement.

6. EASEMENTS—RIGHT-OF-WAY.—Where a right-of-way is reserved or granted, but not defined, the owner of the servient estate, in the first instance, has the right to delimit it, and, in the event of his failure to do so, it may be selected by the grantee of the easement, but, in either case, the location must be a reasonable one, taking into consideration the interest and convenience of both the dominant and the servient estates.

7. RAILROADS—FAILURE TO FILE MAP OR PROFILE.—Crawford & Moses' Dig., §§ 8461-2, requiring railroads to file a map or profile of the right-of-way acquired by them, have no application to rights-of-way acquired for tramroads, though a failure to

comply therewith may be considered as evidence on the question of abandonment, where the grant also included the right to operate as a common carrier.

8.  LOGS AND LOGGING—ABANDONMENT OF RIGHT-OF-WAY FOR TRAM-ROAD.—Evidence *held* to sustain a finding that the owner of timber rights did not abandon a right-of-way for tramway granted in the deed conveying the timber.

9.  LOGS AND LOGGING—NONUSER OF RIGHT-OF-WAY.—Mere nonuser of a right-of-way for a tramway created by deed, for a period however long, will not amount to an abandonment.

10.  EASEMENTS—ABANDONMENT A JURY QUESTION.—Whether there has been an abandonment of an easement is a question of fact and not of law, and the acts relied on as evidencing an intention to abandon should be of an unequivocal and decided character.

11.  EASEMENTS—ADVERSE POSSESSION.—Mere occupancy and cultivation of land were not adverse to the rights of the owner of a right-of-way, as possession must be open, hostile and exclusive.

12.  VENDOR AND PURCHASER—NOTICE OF RECORDED INSTRUMENTS.—One acquiring title to an easement must take notice of all recorded instruments in the line of his purchased title.

13.  EASEMENTS—ADVERSE POSSESSION.—Mere possession by a subsequent grantee of land was not notice of holding adversely to the owner of a right-of-way across the land, since the holding of the grantee's predecessors in title may have been permissive, and the grantee acquired no greater rights than they had.

14.  SET-OFF AND COUNTERCLAIM—WHEN PROPERLY ALLOWED.—It was not error to refuse to strike out a so-called amendment to complaint which set up a counterclaim against defendant's claim for damages for construction of a tramway over land.

15.  EQUITY—RETENTION FOR COMPLETE RELIEF.—Where the court acquired jurisdiction for the purpose of injunction against interference with the construction of a tramway, it was proper for it to retain jurisdiction and grant all relief to which the parties were entitled, including damages for use and occupation of plaintiff's land by defendant, set up against defendant's claim for damages against plaintiff.

16.  ADVERSE POSSESSION—HOLDING BY PERMISSION.—The holding of land begun by permission will not ripen into an adverse or hostile right until notice of such adverse holding is brought home to the owner, and the holding has continued for the statutory period.

17.  ADVERSE POSSESSION—TACKING POSSESSION.—One claiming land by adverse possession has the burden of proving that his predecessors in title held adversely, and that the legal owner

had notice thereof, before he could ·tack his possession on to theirs.

18. ADVERSE POSSESSION—SUCCESSIVE POSSESSION.—One seeking to tack his adverse possession on to that of predecessors in possession must prove a privity of estate between himself and such predecessor, as the mere fact of successive possessions does not constitute privity of estate.

Appeal from Howard Chancery Court; *C. E. John-son,* Chancellor; affirmed.

*W. P. Feazel,* for appellant.

1. When the court determined that the deed was no longer enforceable as to the timber, it became, and was, its duty to cancel the deed. 130 Ark. 9.

2. An easement or right-of-way is an interest in land, and its transfer is controlled by the same essentials and requirements necessary to convey the fee. 73 Ark. 293; 112 Ark. 572. And this court has uniformly held that, if a conveyance of land fails to describe the land with sufficient certainty to ascertain its identity and location, the grantee takes nothing. 3 Ark. 18; 30 Ark. 640; 48 Ark. 419; 35 Ark. 470; 106 Ark. 83; 120 Ark. 69; 117 Ark. 151; Rorer on Railroads, 318. The wise and reasonable requirement of the statute, C. & M. Dig., §§ 8461-2, as to filing a map or profile of the right-of-way in the clerk's office within two years after its acquirement, was never complied with in this case. Rorer on Railroads, 330.

3. Appellant was an innocent purchaser, and, the court having expressly found that he "acquired title to said land by warranty deed * * * and entered into possession thereof, without notice of plaintiff's claim of right-of-way except as implied by law from the record of plaintiff's deed, it is difficult to understand why the court did not decree the grant of right-of-way void and cancel the deed, since the record of the grant furnished him no notice of the location of the right-of-way whatever. ·131 Ark. 335.

4. If the grant of the right-of-way was ever valid, the same is now void because of the abandonment and nonuse of them by the appellee for more than 20 years.

5. Appellant and his predecessors in title have acquired title to the land over which appellee built its tramway by adverse possession, having had the same inclosed and in actual cultivation for more than 15 years. The law of adverse possession applies to rights-of-way and other interests in land. 127 Am. St. 254; 22 S. W. (Ky.) 353; 87 Am. St. 765; 92 Am. St. 840; 146 Ark. 347.

6. The motion to strike the amendment to the complaint should have been sustained, and it was error to quiet the title in appellee to the 14.53 acres. C. & M. Digest, §§ 1076-1079.

*Abe Collins* and *Lake & Lake,* for appellee.

1. The easement is not void for indefiniteness of description. It is not essential that an easement be described by metes and bounds in order to make it effective. All that is required is a reasonably accurate description of the right conveyed. 19 C. J. 971; 130 N. Y. 465, 27 Am. St. Rep. 533; 125 Ark. 357; 67 Miss. 579; 75 So. (Ala.) 574, 576; 197 Fed. 611, 616; 216 Mass. 248; 98 Miss. 134.

2. Crawford & Moses' Digest, §§ 8461-8462, requiring railroads to file a map and profile of rights-of-way, relate to railroads chartered and operated as common carriers, and have no application here. 159 Ark. 484.

3. There is no merit in the claim that appellant acquired the land without notice of appellee's claim of right-of-way. The law required him to take notice of the deed of Young to appellee appearing on the record and of the easement thereby conveyed. 19 C. J. 939; 108 Ark. 490; 87 Ark. 490.

4. Mere nonuser, however long continued, will not be considered an abandonment of a right-of-way. 97 Ark. 234; 19 C. J. 941, 942, and authorities cited; 1 A. L. R. 884.

5. There is no proof in the record that either appellant or his predecessors in title were claiming adversely to appellee's easement in the land. 19 C. J. 956; 133 Ark. 589; 147 Ark. 521; 160 Ark. 48. The burden was on appellant to show that his possession was actual, hostile,

·open and exclusive, continuing without break 'for the full period required by the statute. 65 Ark. 422; 82 Ark. 51; 49 Ark. 266; 61 Ark. 464; 110 Ark. 572; 117 Ark. 579; 126 Ark. 86.

6. Appellant's contention that the motion to strike the amendment to the complaint because the counterclaim set up did not grow out of the transaction on which the original suit is based, is fully answered by C. & M. Digest, § 1197. 134 Ark. 311; 135 Ark. 531; 147 Ark. 521. Chancery, having jurisdiction for one purpose, will retain it for all purposes and grant all relief, legal or equitable, to which the parties are entitled. 113 Ark. 100; 114 Ark. 206; 92 Ark. 15.

WOOD, J. This is an action by the Dierks Lumber & Coal Company, hereafter called appellee, against W. F. Fulcher, hereafter called appellant, to restrain the latter from interfering with the appellee in the construction of certain tramways across lands in the possession of the appellant, but over which appellee desired to run its tramways for the purpose of hauling timber to its mill. Appellee alleged that, in 1904, it purchased of one Thomas J. Young and wife all the pine and oak timber on the west half of the northeast quarter of section 3, township 7 south, range 27 west, and obtained a deed thereto, which it duly filed in the office of the recorder on the 29th day of February, 1904; that, under the provisions of this deed, the appellee, its successors and assigns, were granted a right-of-way one hundred feet in width for the purpose of maintaining, constructing, and operating a railroad thereon, and the full and free right, power and authority, in addition to the right-of-way, to enter upon said lands for the purpose of cutting, sawing, hauling, and carrying away said timber; that appellee, by the terms of said deed, was also granted the right to construct and maintain a tramway of such width as it desired for the purpose of removing the timber from said lands, or from any other land to and over which the appellee might construct its tramways, the intention of the grantor being to grant to the appellee the right to

build, maintain and operate the railroad and tramway across the lands owned by the grantor; that the appellant is the present owner of the above tract of land, having acquired title thereto by mesne conveyance from Young, but that he bought subject to the rights of the appellee under its timber deed. The appellee alleged that it was now ready to cut and remove the timber from the above tract of land, but that appellant refused to permit the appellee to enter upon said land for the purpose mentioned. Appellee alleged that, unless it is permitted to build the tramway across the land and remove its timber, it will suffer irreparable injury; that the appellant is insolvent, and that appellee has no adequate remedy at law. Appellee therefore prayed that appellant be permanently enjoined from interfering with appellee's rights.

In his answer, appellant admitted that he was the present owner of the lands described in appellee's complaint, having acquired title thereto by mesne conveyance from Young and wife, as alleged, but denied that he bought the lands subject to the rights of the appellee under its timber deed. He denied that the appellee, its successors and assigns, were granted a one hundred-foot right-of-way through and upon the lands described, but admitted that there was an attempt in the deed by Young to the appellee to grant the right-of-way. He alleged that the deed was now void because the appellee had failed for twenty years to exercise its right to a right-of-way over the lands, and, further, that the deed was void because there was no description of the right-of-way claimed to have been granted. He admits that the deed granted to the appellee, its successors and assigns, the right to construct the tramway, but alleged that the grant to construct the tramway was likewise now void for the reason that there was no sufficient description of such right-of-way in the deed, and for the further reason that the appellee had not attempted to use such grant for more than twenty years.

By way of cross-complaint, the appellant alleged that there was no time fixed in the deed for the cutting and removing of the timber from the land by the appellee, and that the deed was now void because the appellee had not exercised its right to cut such timber within a reasonable time, and that it had now forfeited such right, as well as its right to build the tramway across the lands. Appellant alleged that, under the protection of a temporary injunction, the appellee had built two tramways across a large part of appellant's cultivated land, to appellant's damage in the sum of $1,000. He alleged that appellee was threatening to go upon the land to cut the timber growing thereon. He alleged that the appellee did not, within two years after the execution of the timber deed to appellee, file with the clerk of Howard County a map or profile showing the location of the right-of-way of its railroad and tramroads which it intended to construct, and had thereby abandoned and forfeited any right it may have had to such right-of-way. Appellant also set up that he and those under whom he held title had been in open, hostile and actual possession of the lands for more than seven years, and had, for this length of time, paid the taxes thereon. He also alleged that the appellee was barred by the statute of limitations and by laches from now locating its right-of-way and from maintaining this action.

The appellee answered appellant's cross-complaint, denying all of its allegations. Appellee also, by an amendment to its complaint, set up that the appellant, for the last six years, had cultivated 14.53 acres of land belonging to the appellee, of a rental value of $5 per acre, and prayed judgment against the appellant in the sum of $435 for such rental, and for an additional sum of $19.22 on account of timber cut and removed by appellant from appellee's land, and that it be permitted to offset such judgment against any amount that appellant might recover against it.

The appellant answered this amended complaint, and alleged that he had cultivated the fourteen acres of

land for more than fifteen years, believing all the time that his fence was on the true line, and for that reason that he had acquired title to the fourteen acres by adverse possession. He also moved to strike the claim for this rental from the files, for the reason that it was improperly joined with the original action.

Appellee introduced the deed from Young and wife, dated January 1, 1904, the recitals of which are as follows:

Thomas J. Young and Sarah E. Young, his wife, in consideration of the sum of $100 paid by the Dierks Lumber & Coal Company, do hereby grant, bargain, sell and convey unto the Dierks Lumber & Coal Company, its successors and assigns, forever, all merchantable timber, pine and white oak, now standing, growing or situated on the W½ of the NE¼ of section 3, township 7 south, range 27 west.

"And we, the aforesaid grantors, do hereby, for the consideration aforesaid, grant, bargain, sell and convey unto the said Dierks Lumber & Coal Company, and unto its successors and assigns forever, a right-of-way 100 feet in width in, through, upon, across and along the aforesaid premises and tracts of land, for the purpose of maintaining, constructing, erecting and operating a railroad, which is intended to be chartered, maintained, constructed and operated by said Dierks Lumber & Coal Company, their successors, associates, and assigns; and the full and free right, power and authority, in addition to the right-of-way and other privileges hereinbefore mentioned and set forth, of entering upon said lands at any and all times for the purpose of cutting, sawing, hauling, carrying away, and removing the said timber and operating, constructing, maintaining and erecting the aforesaid railroad.

"And we, for the consideration aforesaid, also grant and convey unto the said Dierks Lumber & Coal Company, its successors, associates and assigns, the right, privilege and permission to build, construct and maintain tramways through, over and across the above

described lands, of such width as may be desired by the said Dierks Lumber & Coal Company, its successors and assigns, for the purpose of removing, handling, hauling, carrying away and transporting the timber aforesaid from said lands, or to and from any other lands to and over which the said Dierks Lumber & Coal Company, its successors, associates and assigns, may construct said tramways. The intention of the grantors herein being to give a permanent right-of-way to the said Dierks Lumber & Coal Company, its successors, associates and assigns, to build, maintain, construct and operate the railroad and tramways across the said lands.''

Upon the above and other documentary and oral testimony, which is duly authenticated and brought into this record, the court made its findings and entered its decree permanently restraining the appellant from interfering with the appellee in constructing, maintaining and operating tramways across the lands described in the complaint, and confirming and quieting title in the appellee to 14.53 acres of land which had been inclosed and occupied by the appellant. The court dismissed the appellant's cross-complaint for want of equity, but denied appellee's claim for damages on account of the timber cut by appellant on appellee's land, and also appellee's claim for rents for the 14.53 acres of land. The court also entered an order requiring the appellee to construct, for the benefit of the appellant, at a point to be designated by him, thirty days from the date of the judgment, a convenient crossing over appellee's tramways. From this decree both parties have appealed.

In addition to the deed above set forth, we will refer to such parts of the evidence as may be necessary as we proceed.

1. The appellant, in its cross-complaint, alleged that no time was fixed in the deed for removing the timber from the lands described in the complaint purchased by the appellee from Young, and that the appellee had forfeited all of its rights to remove the pine and oak timber because it had failed to exercise its right within a

reasonable time. The appellant prayed, among other things, that the deed from Young and wife be canceled and set aside, and that, upon final hearing, it be enjoined from going upon, cutting, and removing any timber standing upon said lands. The appellee denied the above allegation. The court, in its decree, recites "that the plaintiff has conceded that, not having cut the timber on said lands within a reasonable time, said contract is no longer enforceable in so far as said timber is concerned."

In view of the issue thus raised by the pleadings and the finding of the chancery court as set forth in its decree, the court erred in not granting the prayer of appellant's cross-complaint for the cancellation of appellee's deed to the merchantable pine and white oak timber on the lands described in the deed, and erred in not restraining appellee from cutting and removing such timber. Such decree should have followed, as a necessary result of the court's finding on this issue in the case. Under the provisions of the deed that the "timber may be removed, hauled and transported from said land at the convenience" of the appellee, appellee was required to cut and remove the timber within a reasonable time. From 1904, the date of the deed under which appellee claims, until the institution of this suit January 19, 1923, was more than a reasonable time. *Smith* v. *Dierks Lumber & Coal Co.*, 130 Ark. 9.

But, while the court erred in dismissing appellant's cross-complaint, and in not entering a decree canceling appellee's deed as to its right to cut and remove the timber, nevertheless this error was not prejudicial to the rights of appellant, because, under the recitals of the decree, the appellee and its successors in title would be forever precluded from asserting a right to cut and remove the timber.

2. The appellant contends that the grant of the right-of-way for the railroad and tramways is void for indefiniteness and uncertainty. We cannot concur with learned counsel for appellant in this view. In 19 C. J. 971, § 210, the law applicable to easements of the character under consideration is correctly declared as fol-

lows: "Where a conveyance of a right-of-way does not describe or define it by metes and bounds, the grantee is entitled to a convenient, reasonable and accessible way. What constitutes a way of this character depends upon the condition of the place and the purposes for which it was intended and the acts of those having the right of user. However, the location must be reasonable as respects the rights of the grantor as well as the grantee."

While an easement or right-of-way is an interest in land, and can only be conveyed by deed as land is conveyed, yet it is not essential to the validity of the grant of an easement that it be described by metes and bounds or by figures giving definite dimensions of the easement. On the contrary, the grant of an easement is valid which designates the easement or right-of-way as such, and definitely describes the lands which are made servient to the easement. As is held by the Court of Appeals of New York, "when the right-of-way is not bounded in the grant or reservation, the law bounds it by the lines of reasonable enjoyment." Where such right-of-way is reserved, or expressly granted and not defined, the owner of the servient estate, in the first instance, has the right to delimit it, and, in the event of his failure to do so, it may be selected by the grantee of the easement; but, in either case, the location must be a reasonable one, taking into consideration the interest and convenience of both the dominant and servient estates. 9 R. C. L. 791, § 48, and cases there cited; *Grafton* v. *Mauer,* 103 N. Y. 465, and cases there cited; see also *U. S.* v. *Van Horn,* 197 Fed. 611-616; 14 Cyc. 1161-1203; *Alabama Corn Mills Co.* v. *Mobile Docks,* 75 So. 574; *McKinney* v. *McKinney,* 216 Mass. 248.

Grants of the character under review are what are sometimes designated "floating rights-of-way" which were expressly recognized as valid by us in the case of *St. L. I. M. & So. Ry. Co.* v. *Stevenson,* 125 Ark. 357. In that case the deed to the railroad company granted a right-of-way "through and over said lands situated as aforesaid," without specifying the width of the right-of-

way so granted. Speaking of this grant, we said, "the way granted was not fixed by the deed as to place, quantity, or direction. It was, until located, a *floating right,* exercisable over any portion of the land within the limit or width specified." The above language was quoted from the Supreme Court of Mississippi in the case of *Vicksburg & M. R. R. Co.* v. *Barrett,* 67 Miss. 579, where the grant of the right-of-way "was not to exceed in width one hundred feet, within which limit the officers of the company were to use so much land as they might deem necessary."

3. Sections 8461 and 8462 of Crawford & Moses' Digest require all railroads to file a map or profile with the county clerk, showing the rights-of-way acquired by them, within two years after said rights-of-way have been acquired. The county clerk of Howard County testified that neither the appellee, nor any one for it, had ever filed in his office a map and profile showing the location of the railroad or tramway on appellant's land. The above sections of the Digest refer to railroad corporations which are chartered and operated as common carriers. *Valley Lbr. Co.* v. *Westmoreland Bros.,* 159 Ark. 484. While the appellee alleges in its complaint that it is entitled to a right-of-way one hundred feet wide for the purpose of constructing, maintaining and operating a railroad which is intended to be chartered, and while the appellant in its cross-complaint alleges that the appellee had not filed in the office of the clerk of Howard County a map or profile showing the location of the right-of-way, yet we do not understand that the appellee was asserting any charter powers as a railroad corporation to operate a railroad over appellant's lands as a common carrier, and certainly the court's decree did not award appellee such right. The court's decree, in this respect, enjoined the appellant from interfering with the appellee in constructing, maintaining and operating its tramways across appellant's lands. We do not perceive therefore that the above sections of the Digest have any application to any issue presented by this record. The testimony showing a

failure to comply with these sections of the statute in obtaining a charter to operate a railroad as a common carrier and filing the map or profile, as required, may be considered as evidence on the issue as to whether or not the appellee had forfeited and abandoned by nonuser the rights granted it under the deed. This brings us to the issue of abandonment.

4. The appellant contends that, inasmuch as no survey or location was ever made and no map or profile ever filed, in compliance with the above sections of the statute, the appellee had, by nonuser, abandoned both its right-of-way for a railroad and also its right-of-way for a tramway. The court made no affirmative finding as to the right-of-way for a railroad, and, as we have observed, we do not consider that issue is presented by the pleadings, proof, and the decree of the court for decision. It is not germane here, further than as evidentiary on the issue as to whether or not the appellee has abandoned its right-of-way for a tramway by reason of nonuser of such right-of-way for more than twenty years. The deed grants to the appellee, its successors and assigns, the right for a tramway over the lands described therein, for the purpose of removing and transporting timber from that land, or "to and over any other lands to and over which" the appellee, its successors and assigns, may construct said tramway, the intention being to give a permanent right-of-way across the lands mentioned and through and across all lands owned or held by the grantor."

A witness, who was working for the appellee at the time these lands were bought, stated that the means of logging the timber purchased in that section was mapped out and investigated before the timber was bought, and the plan contemplated hauling the timber over these lands. In buying the timber, appellee was always looking for tramroads. Appellee had bought between seventeen and twenty million feet of timber to go over this tram, and there was no other route over which the timber could be moved conveniently. To move appellee's timber over this tram would require about twelve months. This testi-

mony tends strongly to prove that the intention of the appellee was not to abandon its right to a tramway or logging road over appellant's lands.

The trial court found that there was no evidence in the record of an intention on the part of the appellee to abandon the right-of-way across the lands, except the bare fact of nonuser; that, during all the time since it acquired the right-of-way, appellee had owned a large body of timber which must be reached by a logging road, and there is no evidence that it had provided, or could provide, a right-of-way to this timber over any other land, and appellee contemplated using the right-of-way across appellant's land when it became necessary to reach its timber in that locality.

To justify the finding that an easement by grant had been abandoned by nonuser, there should be something in the testimony, in addition to mere nonuser, indicating an intention to abandon. For the law is that, "unless otherwise provided by statute or by the deed itself, the mere nonuser of an easement created by deed for a period however long will not amount to an abandonment." 19 C. J. 942, § 151, and numerous cases there cited. Whether there has been an abandonment of an easement in any given case is a question of fact and not of law, and the acts relied on as evidencing an intention to abandon should be of an unequivocal and decided character. 19 C. J. 940, § 149, and cases cited in note.

The cases seem to be generally agreed that mere nonuser of an easement will not extinguish the same. 1 A. L. R. 884, where the cases are annotated. In the case of *Gurdon & Ft. S. R. Co.* v. *Vaught,* 97 Ark. 234, on the issue as to whether or not the railroad company had abandoned its right-of-way, which had been conveyed by deed, because of nonuser, we said: "While nonuser does not alone constitute an abandonment, yet it is some evidence thereof, and when, in addition to such nonuser, facts are proved and circumstances shown in the testimony evincing that intention, then the abandonment is estab-lished. * * * To constitute an abandonment of an

easement acquired by grant, acts must be shown of such an unequivocal nature as to indicate a clear intention to abandon.    *   *   *   The abandonment of an easement of a public nature, like a railroad right-of-way, is more readily presumed from nonuser.''

In the present case, as we have seen, the issue of abandonment must be treated, not like the abandonment of an easement of a public nature, as the abandonment of the right-of-way by a railroad, but as an abandonment of an easement of a private nature. It occurs to us that there is no escape from the conclusion that there was no abandonment by the appellee of its right to build tramways over the appellant's lands, and that appellee's right is as broad as the terms of the grant set forth in the deed.

5.   The appellant next contends that the appellee has lost its right in the easement by adverse possession of appellant and his predecessors in title. This likewise is purely an issue of fact. The trial court found ''that there is no evidence in the record tending to show that the defendant was holding this land adversely to the right of the plaintiff to the right-of-way. *   *   There is nothing to show that he ever brought to the attention of the plaintiff that he was holding adversely to its rights.'' While the undisputed testimony shows that the appellant and his predecessors in title had inclosed and occupied the lands for more than fifteen years before this action was brought, nevertheless this of itself was not sufficient to prove that the appellee had lost its right to the easement by adverse possession of the appellant and his predecessors in title. For aught that the record shows to the contrary, such occupancy during all these years was not adverse to appellee's easement. To make such a holding adverse, it was incumbent upon the appellant to prove, not merely that he was occupying and cultivating the land, but that he was holding the same adversely to the rights of the appellee. The burden was upon the appellant to prove not only that his possession was actual, but that it was open, hostile and exclusive. *Nicklace* v. *Dick-*

*erson,* 65 Ark. 422; *Newman* v. *Peay,* 117 Ark. 579; *Jones* v. *Temple,* 126 Ark. 86.

The mere occupancy or cultivation by the appellant might have been all the while by permission of the appellee, and, in the absence of proof to the contrary, it must be held that such holding was permissive and not adverse. The mere inclosing and cultivating the lands for the length of time indicated was not inconsistent with the appellee's rights, unless appellant, or those under whom he claims, notified the appellee that they intended to hold them adversely. The same rule as to adverse possession applies to easements as to the land itself. 19 C. J. 556; see *Britt* v. *Berry,* 133 Ark. 589; *Kell* v. *Butler,* 147 Ark. 521; *Moyer* v. *Bailey,* 146 Ark. 347. It must not be overlooked that, when appellant purchased these lands, he did so at least with constructive notice that they were burdened with appellee's easement, because the deed from Young and wife to the appellee was executed January 1, 1904, and duly recorded February 29, 1904. Appellant acquired his title through mesne conveyance from Thomas J. Young and wife, his immediate grantors being W. G. George and wife, and his deed was dated February 5, 1917. The appellant had to take notice of all prior recorded instruments in the line of his purchased title. *White* v. *Moffett,* 108 Ark. 490. Appellant therefore was not an innocent purchaser, and was not relieved of the burden of notifying the appellee that he was holding adversely to the rights of the appellee. Appellant's mere possession was not such notice because the holding of his predecessors in title may have been permissive, and he acquired no greater rights than they had. See *Kell* v. *Butler, supra.* Appellant's grantor, George, when he purchased of Young, had constructive notice of appellee's right to the easement, because appellee's deed to such easement was then of record. *Collins* v. *Bluff City Lumber Co.,* 86 Ark. 202.

6. In his cross-complaint appellant set up that appellee had damaged him, by building tramways over his lands, in the sum of $1,000. The appellee answered

this cross-complaint, denying its allegations, and, on the same day, it filed what it designates as an amendment to its complaint, in which it set up that the appellant had been cultivating 14.53 acres of land which had a rental value of $435.90. Appellee also set up that appellant had cut timber from its land of the value of $19.22, and in its prayer to this pleading it asked that it have judgment for the alleged rents, and that the judgment therefor be offset against any judgment that appellant might recover against it, and also prayed for all other legal, proper and equitable relief. The appellant answered this pleading, setting up title to the 14.53 acres by adverse possession, and also moved to strike this pleading of the appellee from the files on the ground that the counterclaim set up therein did not grow out of the same transaction on which the suit was based. It does not appear that the trial court ruled, or was asked to rule, before the hearing on the motion to strike. At the hearing the court found that the 14.53 acres of land belonged to the appellee, and that the appellant had been cultivating the same for six years; that the rentals due by appellant to the appellee on account of such occupancy of this land would be offset by the damages which appellant had sustained by reason of the construction and maintenance of the tram by the appellee over the appellant's land.

The court did not err in failing to strike from the files appellee's so-called amendment to its complaint in regard to the 14.53 acres. Although designated as an amendment to the complaint, it was in the nature of a set-off or counterclaim against appellant's claim for damages against the appellee in the sum of $1,000. Under the act approved March 1, 1917, § 1197 of Crawford & Moses' Digest, a set-off may be pleaded in any action for the recovery of money, and may be a cause of action arising either upon contract or tort, and it is properly pleaded whether it arose out of the contract or transaction sued upon or not. *Coats* v. *Milner*, 134 Ark. 311: *Smith* v. *Glover*, 135 Ark. 531; *Huggins* v. *Smith*, 147 Ark. 521. Besides, the court having acquired jurisdiction for the

purpose of the injunction, it was proper for it to retain it and to grant all the relief, legal or equitable, to which the parties in the lawsuit were entitled. *Merchants' & Farmers' Bank* v. *Harris,* 113 Ark. 100-111, and cases there cited. See also *Hall* v. *Huff,* 114 Ark. 206.

The finding by the court that the appellant had not acquired title to this 14.53 acres by adverse possession is not clearly against a preponderance of the testimony. The appellant only bought eighty acres from George, and this did not include the 14.53 acres, although it was under fence. Much of what we have already said in regard to the issue of appellant's alleged title to the easement by adverse possession is applicable to this 14.53 acres. There is nothing in the testimony to show that the holding by George of this tract was adverse to the appellee, nothing to show that such holding was not originally permissive, and that it did not so continue after appellant began to occupy it. If the holding began by the permission of the appellee, it would not ripen into an adverse or hostile right until notice of such adverse holding was brought home to the appellee and the holding had been continued thereafter for the statutory period. *Kell* v. *Butler,* and *Britt* v. *Berry, supra.* There is no testimony to prove that appellee had notice of any adverse holding of this tract by the predecessors of the appellant, and appellant himself had only had possession thereof for six years. The burden was upon the appellant to prove that his predecessors held this tract adversely, and that appellee had notice thereof, before he could tack his possession on to theirs and thus build up a title by adverse possession. There is no testimony to show that there was any privity of estate between George and the appellant as to this 14.53 acres. "The mere fact of successive possessions appearing would not constitute such privity." *Erck* v. *Church,* 4 L. R. A. 641, and case-note. See also *Waller* v. *Dansby,* 146 Ark. 306, and cases there cited. It was within the scope of appellee's prayer for general relief to quiet its title to this 14.53 acres, and the decree of the court in that respect was not erroneous.

7. The appellee, on its appeal, contends that the court erred in not rendering a decree in its favor in the sum of $190, made up of $174 for rents for the 14.53 acres at $4 per acre for three years, and $16.29 for 5,432 feet of timber cut from the land of appellee by the appellant at $3 per thousand. The appellee did not pray any judgment over against the appellant for rents. Its specific prayer concerning this was that such judgment as might be awarded it for rents be offset against any judgment that might be rendered against it in favor of the appellant for damages to his lands. The court disposed of this contention by finding that whatever damages appellant had sustained to his lands by the building and maintenance of the tramways were offset by any amount that might be due the appellee for use and occupancy of its land by the appellant. The court might have found, from the testimony on behalf of the appellant, that the manner in which the trams were constructed and maintained had made the cultivation of his lands more inaccessible and inconvenient than it otherwise would have been, and thereby damaged the appellant. The witnesses do not fix the amount of such damages, and the court does not, in its decree, fix any amount. The undisputed testimony shows that a reasonable value for the use of the 14.53 acres was between four and five dollars per acre. We cannot say that the court erred in finding that the appellant sustained damages by reason of the manner in which the tramways were constructed and maintained, nor can we say that the court erred in finding that the amount of such damages would offset and equal whatever amount the appellee might be entitled to recover for the use and occupancy of its 14.53 acres by the appellant. Indeed, it occurs to us that the finding of the court on this branch of the case was entirely just and equitable, for the burden of proof to show that the appellee was entitled to judgment for the use and occupancy of the 14.53 acres was on the appellee. We do not find any evidence in the record tending to prove that the occupancy of the 14.53 acres by the appellant was not by consent and permission of the

appellee.  If such were the case, then of course the appellee would not be entitled to recover as for use and occupation.

Appellee does not even allege, much less prove, that such occupancy by the appellant was without its permission.  It therefore fails to establish its contention that it was entitled to a judgment for use and occupation of the 14.53 acres by the appellant.

As to the timber, the appellee proves by one witness that he saw the appellant cut only one tree, and saw stumps where other trees had been cut, but does not show that appellant cut these.  On the other hand, the appellant admits that he cut one tree, but denies that he cut any other timber, except saplings, and says that the tree he cut was not fit for sawlogs, as it was rotten after it got up a piece from the bottom.  Therefore the court did not err in denying the appellee any judgment for the timber.

Upon a careful examination of the whole record we do not find any error prejudicial to appellant, and the decree is therefore affirmed.