Ark. Valley Electric Cooperative Corp. *v.* Brinks

5-3795                                          400 S. W. 2d 278

Opinion delivered February 28, 1966

[Rehearing denied April 4, 1966.]

*Edgar Woolsey* and *Jack Yates,* for appellant.

*Holman & Boyett,* for appellee.

Paul Ward, Justice. The issue in this litigation relates to the location of an easement for a power transmission line right-of-way across land owned by appellees.

On July 22, 1964 Hugh E. and Clemmie Brinks (appellees) signed a written instrument conveying to the Arkansas Valley Electric Cooperative Corporation (appellant) a 100 feet wide permanent easement across their land, giving appellant the usual rights to enter, survey and erect and maintain electric power transmission lines, etc. Although the instrument was not signed by appellant it does recite that appellant agrees to pay appellees (in addition to the cited consideration of $1)

as follows: "$1 per rod; $10 per pole; $10 per anchor."
The description in the instrument reads:

"All that part of the SW of SW of SE Sec 28
lying west of Spadra Creek also the SE of SE and
the south 25 acres of the SW of SE and the E½ of
E½ of SE of SW Sec 29 all in Twp 10 N Range 23
West."

There is nothing in the instrument which describes, or
even indicates, the location of the 100 feet right-of-way
across the land.

Sometime later, when agents of appellant began
clearing the right-of-way across the middle of his land,
appellee filed a complaint in chancery court (April 19,
1965) alleging that before he and his wife signed the
instrument he had an understanding with appellant that
the right-of-way would "be located on the extreme
northern edge . . ." of his property, running east and
west. It was further alleged that the south portion of
his land was "much more valuable than the area
through which plaintiffs agreed said lines could be lo-
cated." The prayer was that appellant "be restrained
and enjoined from further cosstructing . . ." said lines.
The issue was joined on appellant's answer stating, in
effect, that a definite location of right-of-way was
agreed to by appellees before they signed the instru-
ment.

After a hearing, the trial court found "that the cen-
ter line of said easement is located fifty feet south from
plaintiffs' north property line . . . ."

The only point raised by appellant is that the
weight of the evidence does not support the finding of
the trial court. We do not agree.

In the case of *Fulcher* v. *Dierks Lumber & Coal Co.*,
164 Ark. 261 (p. 271), 261 S. W. 645, there appears a
statement which is applicable in this case:

"Where such right-of-way is reserved or expressly granted and not defined, the owner of the servient estate, in the first instance, has the right to delimit it, and, in the event of his failure to do so, it may be selected by the grantee of the easement; but, in either case, the location must be a reasonable one, taking into consideration the interest and convenience of both the dominant and servient estates."

Under the rule above set out, even if there was no meeting of the minds here as to a definite location of the right-of-way, the trial court would have been justified in placing it on the north side. This is true because the undisputed evidence shows appellees' damages would be greater if the right-of-way ran through or near the middle of their property. Their land lies on the north side of Clarksville with part of it within the city limits on College Avenue. Also, it is ready for development, being available to water, gas, electricity, and sewer. There is no showing that appellant will be seriously damaged if the line is on the north side.

However, the trial court went further and made the positive finding that it was understood the right-of-way center line was to run 50 feet south of the north line of appellees' property. We think this finding is supported by the weight of the evidence.

Mr. Brinks testified in substance: I went over the land with Mr. Doyle (agent of appellant) prior to signing the instrument; I told him I would sign if the line was run on the north side; I told this to my wife before she signed; later a surveyor was sent out by appellant, and he indicated the line would go near the middle, but I protested; promptly I wrote appellant we would go to court unless the line was moved to the north side; Mr. Doyle showed me an aerial photo map of my land, but I looked at it and there was no line on it to show where the right-of-way was to run; later another agent of appellant came out; we walked over the land, and I pointed out the north line. Mr. Doyle told a different story. He

testified: I showed the map to appellee Brinks, and it had a red line on it; the red line was put on the map by Olgar & Martin, engineers in Joplin, Missouri. John M. Taylor, an abstracter in Clarksville, testified he put the red mark on the map. Charley McCorley, agent of appellant, testified that he staked out the center line, and that Mr. Brinks 'walked quite a ways' but made no protest.

In *Snyder* v. *Snyder,* 233 Ark. 188, 343 S. W. 2d 420, we said:

"It would serve no useful purpose to detail the testimony . . . or to discuss the circumstances . . . in order to show with whom the truth may rest . . . ." "This case affords a classic application of the well recognized statement that the Judge, seeing the witnesses, is in a better position to decide the credibility than is an appellate court, which merely sees the words on the page."

Applying the well established rule so aptly stated above, we are not willing to say the finding of the trial court is against the weight of the evidence.

Affirmed.

HARRIS, C. J., and SMITH, J., dissent.