CARROLL ELECTRIC COOPERATIVE
CORPORATION *v.* Joe BENSON and Amelia Benson

92-1122                                       848 S.W.2d 413

Supreme Court of Arkansas
Opinion delivered March 1, 1993

*Everett, Stills & Gunderson*, by: *John C. Everett*, for appellant.

*James N. McCord*, for appellees.

JACK HOLT, JR., Justice. The issue presented is whether the appellant, Carroll Electric Cooperative Corporation (hereafter "Carroll Electric"), had a right pursuant to a 1962 easement to extend certain existing power lines across the western portion of appellees', Joe and Amelia Benson (hereafter "the Bensons"), property or was required to acquire a new easement. We hold that the trial court erred in determining that Carroll Electric could not extend this power line under a 1962 easement but remand to the trial court for its determination of the reasonableness of the route chosen for the line.

On May 12, 1962, the appellees' predecessor in title, Arrow Land Company, Inc., granted Carroll Electric the following described right-of-way easement:

> KNOW ALL MEN BY THESE PRESENTS, that we Arrow Land Company, Inc. . . .do hereby grant unto the Carroll Electric Cooperative Corporation. . .the right to enter upon the lands of the undersigned. . .and to place, construct, operate, repair, maintain, convert to higher or lower voltage, *to extend lines for other service upon the above lands and to extend lines from services on this land to and for service to other property and services beyond the above described lands, and overhead or underground electric transmission or distribution line or cable,* such overhead lines or underground cable to serve as distribution or transmission line or both and to excavate, to cut, and trim trees and shrubbery to the extent necessary to lay cable and to keep clean said electric lines or cable, and to cut down from time to time all dead, weak or dangerous trees that are tall enough to strike wires in falling.
>
> The undersigned agree that all poles, wires, and other facilities, including any main service entrance equipment, installed on the above described lands at the Cooperative's expense shall remain the property of the Cooperative,

removable at the option of the Cooperative upon termination of service to or on said lands.

In granting this easement, it is understood that all pole locations, only a single pole and appurtenances will be used, and that the location of the poles will be such as to form the least possible interference to farm operations, so long as it does not materially increase the cost of construction.

(Emphasis added.)

Three years later, in 1965, this property, Pointe Clear Heights Subdivision, was platted. In 1967, in accordance with this right-of-way easement, Carroll Electric constructed an overhead electric line into the center of the Bensons' property to serve the residence now owned by the Bensons.

The Bensons filed this lawsuit on June 29, 1992 after Carroll Electric entered their land and cut down numerous large trees to clearcut a path for the construction of an overhead electric transmission line on the west side of their property to provide electric power to a residence on property in Pointe Clear Heights Subdivision owned by Mr. Larry Cox. Carroll Electric placed several tall poles within the clearcut path in preparation for stringing the overhead transmission line across the Bensons' property. Carroll Electric did not confer with the Bensons prior to cutting the path or placing poles nor did it give the Bensons an opportunity to "delimit" (lay out the boundary of) the easement. The Bensons approached the electric company and offered to permit underground wiring but the company refused.

The Bensons filed a complaint in Benton County Chancery Court requesting a preliminary as well as a permanent injunction enjoining Carroll Electric from further constructing overhead transmission lines across their property. The chancery court granted the preliminary injunction. Thereafter, the Bensons amended their complaint to ask for a mandatory injunction ordering Carroll Electric to remove all new poles and new overhead electric lines placed on the clearcut path across their property. Both sides filed motions for summary judgment, and the matter was submitted to the court. After considering the stipulated exhibits and facts, the chancellor granted the Bensons'

countermotion for summary judgment. In reaching this decision, the chancellor made the following findings of fact and conclusions of law:

6. On May 12, 1962 plaintiffs' predecessor in title, Arrow Land Company, Inc., granted Defendant, Carroll Electric Cooperative Corporation, a "floating" (not described by metes and bounds) right-of-way easement across plaintiffs' land and adjoining land. The legal description of said right of way easement includes all of the land within Pointe Clear Heights Subdivision, Benton County, Arkansas.

7. The plat of Pointe Clear Heights Subdivision was filed of record in 1965.

8. In 1967, defendant constructed an overhead transmission line across the Benson's property to provide electric power to the residence on the property. Defendant has constructed other overhead electric lines throughout Pointe Clear Heights Subdivision to provide electric power to approximately 15 other residences in the subdivision. . . .Defendant has utilized said electric lines for many years to provide electric power to said residences.

9. Defendant proposes to construct a new overhead electric line across plaintiffs' property to provide electric power to a new residence under construction on property owned by Larry Cox, which adjoins Lot 13, Block 7 of the Bensons' property. The proposed new electric line would be an extension of an existing electric line. Defendant is legally obligated to provide electric service to the Cox property.

10. Employees of defendant recently entered upon the plaintiffs' property and cut down numerous large trees to clearcut a path across plaintiffs' lands for construction of the proposed new overhead electric line. The new electric line was partially constructed prior to entry of the Preliminary Injunction in this case. One additional pole would be installed on the Bensons' property if the line is completed.

11. Defendant has not obtained a new right-of-way grant from plaintiffs authorizing defendant to construct a

new electric line across plaintiffs' property.

12. The "floating" right of way granted to defendant by plaintiffs' predecessor in title has become fixed. In *Bradley* v. *Arkansas Louisiana Gas Company*, 280 Ark. 492, 659 S.W.2d 180 (1983) the Supreme Court held:

. . .Undesignated grants of rights-of-way may be termed "floating rights-of-way" until located and utilized but thereafter such easements become fixed.

. . .After the location is designated and used it cannot thereafter be redesignated at a different location without another grant.

13. A right-of-way grant is to be construed against the party preparing it, and in construing the grant the objective is to ascertain the intent of the parties.

14. The Court is not persuaded that the grantor of the 1962 "floating" easement intended that power lines could be erected 30 years later by the grantee independent of input by the successors to the grantor and without consideration as to the reasonable use and enjoyment of the property by the successors to the grantor.

15. Defendant cannot rely upon the 1962 easement and should be required to obtain a new easement.

IT IS, THEREFORE, CONSIDERED OR-DERED, ADJUDGED AND DECREED that defendant Carroll Electric Cooperative Corporation is hereby permanently enjoined from constructing a new electric line across plaintiffs' property and defendant is hereby ordered to remove all new poles and electric lines which have been placed on plaintiffs' property and to remove the debris and tree stumps on plaintiffs' property within the path cut across said property by defendant.

The chancellor's reliance upon *Bradley* is misplaced. In *Bradley* the issue before this court was whether Arkla had the right under a 1960 easement to relocate a pipeline across the property owners' land without obtaining a new right-of-way. The new pipeline location was about one hundred feet south of the existing right-of-way. The language of the easement agreement

gave the grantor the "right to lay, maintain alter, repair, operate and remove pipe lines for the transportation of oil and gas." *Bradley*, 280 Ark. at 495. There, as here, the right-of-way was undesignated. Yet, in holding that a new right-of-way was required, this court held that when the grantee selects a right-of-way not specifically described in the grant, the right-of-way becomes fixed and the "grantee has no right to go upon other parts of the grantor's land without a new grant." *Bradley*, 280 Ark. at 496.

█ However, *Bradley* is not comparable to the facts at hand. In *Bradley* the utility was relocating the right-of-way while here, Carroll Electric is *extending* a powerline under the authority of the existing easement. This line extension is clearly permitted by the 1962 easement agreement which states that Carroll Electric may "extend lines *for other service upon the above lands and to extend lines from services on this land to and for service to other property.*" (Emphasis added.)

█ While it is true that a right-of-way grant is to be construed against the party preparing it, the language in the 1962 easement plainly provides that Carroll Electric may extend the lines as needed to provide service to other property, and that is just what they have done here. While the right-of-way of the lines to the Bensons' residence may have become fixed, the 1962 easement is still "floating" as to the extension of a line situated near the west side of their property. In sum, Carroll Electric was within its rights to extend this electric line across the west side of the Bensons' property to service the Cox property.

█ Although Carroll Electric is entitled to extend its power lines pursuant to the existing 1962 easement, this right-of-way easement entitles both the grantee and the grantor to a convenient, *reasonable*, and accessible way. *Fulcher* v. *Dierks Lumber & Coal Co.*, 164 Ark. 261, 261 S.W. 645 (1924). The location of the undefined right-of-way must be reasonable to both the dominant and servient estates, considering the condition of the place, the purposes for which it was intended, and the acts of the grantee. *Id.* Further, the owner of the servient estate has the right to delimit the easement. *Id.* We have consistently applied the law as stated in *Fulcher. See Bradley* v. *Arkansas Louisiana Gas Co.*, 280 Ark. 492, 659 S.W.2d 180 (1983); *Arkansas Valley Elec.*

*Coop. Corp.* v. *Brinks*, 240 Ark. 381, 400 S.W.2d 278 (1966); *Drainage Dist. No. 16* v. *Holly*, 213 Ark. 889, 214 S.W.2d 224 (1948).

A review of the abstract reveals that the parties attempted to stipulate as to the reasonableness of the exact route but ultimately agreed with each other and with the court that this issue should be reserved depending upon the trial court's decision regarding the status of the easement. As the trial court made no further findings in this regard, we remand this issue to the trial court as well as for further proceedings consistent with this opinion.

Reversed and remanded.