CARROLL ELECTRIC COOPERATIVE CORPORATION
*v.* Joe BENSON and Amelia Benson

94-593                                      889 S.W.2d 756

Supreme Court of Arkansas
Opinion delivered December 19, 1994

*Everett, Mars & Stills*, by: *David D. Stills* and *John C. Everett*, for appellant.

*James N. McCord*, for appellees.

STEELE HAYS, Justice. This is the second appeal regarding whether appellant Carroll Electric Cooperative Corporation (Carroll Electric) had a right pursuant to a 1962 easement to extend existing power lines across property of the appellees Joe and Amelia Benson (Bensons). In *Carroll Elec. Coop. Corp. v. Benson*, 312 Ark. 183, 848 S.W.2d 413 (1993), we held the trial court erred in determining that Carroll Electric could not extend its power line under a 1962 easement but remanded to the trial court for a determination of the reasonableness of the route chosen for the line as well as for further proceedings consistent with the opinion. On remand, the chancellor concluded the *overhead* power line in its present location was not reasonable and directed the power line be placed underground. We find the chancellor erred in directing the power line be placed underground.

The facts, as outlined in *Carroll I, supra*, are as follows:

On May 12, 1962, the appellees' predecessor in title, Arrow Land Company, Inc., granted Carroll Electric the following described right-of-way easement:

KNOW ALL MEN BY THESE PRESENTS, that we Arrow Land Company, Inc. . . . .do hereby grant unto the Carroll Electric Cooperative Corporation . . . the right to enter upon the lands of the undersigned . . . and to place, construct, operate, repair, maintain, convert to higher or lower voltage, *to extend lines for other service upon the above lands and to extend lines from services on this land to and for service to other property and services beyond the above described lands,* [and replace thereon, in, under or upon all streets, roads, highways abutting said lands][1] *and overhead or underground electric transmission or distribution line or cable,* such overhead lines or underground cable to serve as distribution or transmission line or both and to excavate, to cut, and

---

[1]The bracketed segment was omitted inadvertently from the opinion.

trim trees and shrubbery to the extent necessary to lay cable and to keep clean said electric lines or cable, and to cut down from time to time all dead, weak or dangerous trees that are tall enough to strike wires in falling.

The undersigned agree that all poles, wires, and other facilities, including any main service entrance equipment, installed on the above described lands at the Cooperative's expense shall remain the property of the Cooperative, removable at the option of the Cooperative upon termination of service to or on said lands.

In granting this easement, it is understood that all pole locations, only a single pole and appurtenances will be used, and that the location of the poles will be such as to form the least possible interference to farm operations, so long as it does not materially increase the cost of construction. [Emphasis added.]

Three years later, in 1965, this property, Pointe Clear Heights Subdivision, was platted. In 1967, in accordance with this right-of-way easement, Carroll Electric constructed an overhead electric line into the center of the Bensons' property to serve the residence now owned by the Bensons.

The Bensons filed this lawsuit on June 29, 1992 after Carroll Electric entered their land and cut down numerous large trees to clearcut a path for the construction of an overhead electric transmission line on the west side of their property to provide electric power to a residence on property in Pointe Clear Heights Subdivision owned by Mr. Larry Cox. Carroll Electric placed several tall poles within the clearcut path in preparation for stringing the overhead transmission line across the Bensons' property. Carroll Electric did not confer with the Bensons prior to cutting the path or placing poles nor did it give the Bensons an opportunity to "delimit" (lay out the boundary of) the easement. The Bensons approached the electric company and offered to permit underground wiring but the company refused.

The Bensons filed a complaint in Benton County Chancery Court requesting a preliminary as well as a permanent injunction enjoining Carroll Electric from further constructing overhead transmission lines across their property. The chancery court granted the preliminary injunction. Thereafter, the Bensons amended their complaint to ask for a mandatory injunction ordering Carroll Electric to remove all new poles and new overhead electric lines placed on the clearcut path across their property. Both sides filed motions for summary judgment, and the matter was submitted to the court. After considering the stipulated exhibits and facts, the chancellor granted the Bensons' countermotion for summary judgment.

On remand, the chancellor concluded the question for the court is: "Is the location of the right-of-way selected by Carroll reasonable to both the dominant and servient estates, considering the condition of the place, the purpose for which it was intended and the acts of the grantee." The chancellor found when all the facts are considered "equity demands I must come to the conclusion that the overhead powerline in its present location is not reasonable." However, he concluded the present route is a reasonable route for an underground power line.

Appellant Carroll Electric contends this Court remanded the case solely for a "determination of the reasonableness of the route chosen for the line." Consequently, Carroll Electric submits the trial court erred when it balanced the equities between the parties and ruled on the rights of the Bensons to delimit the easement. Specifically, the appellant focuses on a sentence in the chancellor's order where he states: "[t]he real argument between the parties is whether Carroll Electric should be required to place the powerline underground and pay for it."

It is well established that, upon remand, a chancery court has no power to enter any decree except that directed by the Supreme Court, and it has no power to change or extend the mandate of the Supreme Court. *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979). The directions of the Supreme Court upon reversal and remand in an equity case are the law of the case and the guide for the lower court in entering the decree. *Id.*

In *Carroll I*, we found "Carroll Electric was within

its rights to extend this electric line across the west side of the Bensons' property to service the Cox property." However, immediately following that conclusion, we wrote:

> Although Carroll Electric is entitled to extend its power lines pursuant to the existing 1962 easement, this right-of-way easement entitles both the grantee and the grantor to a convenient, *reasonable*, and accessible way. *Fulcher* v. *Dierks Lumber & Coal Co.*, 164 Ark. 261, 261 S.W. 645 (1924). The location of the undefined right-of-way must be reasonable to both the dominant and servient estates, considering the condition of the place, the purposes for which it was intended, and the acts of the grantee. *Id.* Further, the owner of the servient estate has the right to delimit the easement. *Id.* . . .
>
> A review of the abstract reveals that the parties attempted to stipulate as to the reasonableness of the exact route but ultimately agreed with each other and with the court that this issue should be reserved depending upon the trial court's decision regarding the status of the easement. As the trial court made no further findings in this regard, we remand this issue to the trial court as well as for further proceedings consistent with this opinion.

We remanded the case to the trial court for a determination of the reasonableness of the route. In determining whether the route was reasonable for both the grantee and grantor, we find the chancellor properly examined the impact of the route. This included the relative hardships on the two parties — the balancing of the equities. Also, we recognized in *Carroll I* that the owner of the servient estate has the right to delimit the easement, thus the Bensons' right to delimit is a factor to be considered in determining the reasonableness of the route.

However, the chancellor exceeded our mandate and decision by dictating the power line must be placed underground. Any questions regarding the validity and the terms of the 1962 lease agreement were conclusively decided. In *Carroll I*, we upheld the validity of the 1962 easement agreement and held the line extension is clearly permitted. The 1962 easement explicitly provides for "*overhead or underground* electric transmission or distribution line or cable." Thus, Carroll Electric has the right to

use either overhead or underground power lines. According to the terms of the agreement, it is their decision.

■ The chancellor concluded the Bensons have the "right to delimit in the vertical plan and therefore reasonably demand that the powerline be placed *underground along the route selected by Carroll*." (Emphasis supplied.) In *Fulcher, supra*, the Court, in discussing a "floating" easement, stated:

> Where such right-of-way is reserved, or expressly granted and *not defined*, the owner of the servient estate, in the first instance, has the right to *delimit* it, and, in the event of his failure to do so, it may be selected by the grantee of the easement; but, in either case, the location must be a reasonable one, taking into consideration the interest and convenience of both the dominant and servient estates.

(Emphasis supplied.) In the instant case, the terms of the easement, i.e. an easement for underground or overhead electrical lines, were defined. The portion of the easement which is undefined is the specific route on which the lines will cross the Bensons' property.

As to that issue, the "right-of-way easement entitles both the grantee and the grantor to a convenient, *reasonable*, and accessible way." *Carroll I*. The role of the chancellor must be to ascertain whether the selected route is a convenient, reasonable, and accessible way for both the grantee and grantor. If the route selected by Carroll Electric does not satisfy these requirements, the chancellor must ascertain a satisfactory route across the Bensons' property because Carroll Electric is entitled to extend its line across the west side of the Bensons' property under the 1962 easement. *Carroll I*.

In a comparable case, *Ark. Valley Elec. Coop. Corp. v. Brinks*, 240 Ark. 381, 400 S.W.2d 278 (1966), this Court relied upon *Fulcher, supra*, to comment in dicta that a trial court would have been justified in determining the location of a right-of-way. Appellant Arkansas Valley Electric Cooperative Corporation held a 100 foot wide easement across the Brinks' property; however, the location of the right-of-way was not described in the written agreement. The trial court found there was a "meeting of the minds" as to the definite location of the right-of-way. However,

we stated the trial court would have been justified in placing the right-of-way on the north side of the property because the property owners' damages would be greater if the right-of-way ran through or near the middle of their property. In addition, we noted there was no showing that the appellant would be seriously damaged if the line was on the north side.

In sum, Carroll Electric is entitled to extend its line across the west side of the Bensons' property under the 1962 easement. *Carroll I*. Further, the 1962 easement explicitly allows Carroll Electric to use overhead power lines. Thus, the chancellor simply must ascertain the definite location of a route across the Bensons' property which is a convenient, reasonable, and accessible way for both the grantee and grantor.

Reversed and remanded.

NEWBERN and BROWN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. As the majority opinion points out, an underground route is contemplated by the 1962 easement. Nothing in the opinion suggests there is any restriction preventing such a route. The Chancellor did as we directed in our earlier opinion and chose what appeared to him to be the most reasonable route under the circumstances.

I respectfully dissent.

BROWN, J., joins in this dissent.